997 A.2d 185

LINDEN BOARD OF EDUCATION, PLAINTIFF–RESPONDENT,
v. LINDEN EDUCATION ASSOCIATION ON BEHALF OF
JOHN MIZICHKO, DEFENDANT–APPELLANT.

Argued January 5, 2010—Decided June 8, 2010.

Rivera-Soto, J., concurred in result.

*Louis P. Bucceri*, argued the cause for appellant (*Bucceri & Pincus*, attorneys).

*Mark A. Tabakin*, argued the cause for respondent (*Weiner Lesniak*, attorneys; *Mr. Tabakin*, *Sarah A. Makuch*, and *Margaret A. Miller*, on the briefs).

*Sanford R. Oxfeld*, argued the cause for *amicus curiae* IFPTE Local 195 (*Oxfeld Cohen*, attorneys; *Mr. Oxfeld* and *Randi Doner April*, on the brief).

*John J. Burns*, argued the cause for *amicus curiae* New Jersey School Boards Association (*Cynthia J. Jahn*, General Counsel, attorney).

Justice WALLACE, JR., delivered the opinion of the Court.

The central issue in this case concerns the interpretation of an arbitration award. After the Linden Board of Education (Board) terminated an employee for an asserted infraction, the Linden Education Association (Association) filed a grievance on behalf of the employee. The parties agreed to submit to arbitration the questions whether "the [B]oard of Education h[ad] just cause to terminate" the employee, "[a]nd if not, what shall be the remedy?" The arbitrator found that while there was just cause to discipline,

just cause to "terminate require[d] that the penalty fit the infraction[,]" and under the totality of the circumstances, the Board failed to prove that termination was appropriate. The arbitrator imposed the penalty of a ten-day suspension without pay and reinstated the employee with full back-pay. In response, the Board filed a complaint in the Law Division, and the trial court confirmed the award. The Appellate Division reversed with one judge dissenting.

Due to the dissent in the Appellate Division, this matter is before the Court as a matter of right. *R.* 2:2–1(a)(2). We now reverse. We hold that the arbitrator answered "no" to the question whether the Board had just cause to terminate, and as directed by the parties, imposed an appropriate sanction.

## I.

The material facts are not in dispute. John Mizichko (Mizichko) began his employment with the Board in July 2000 as a custodian and was a member of the Association. On May 5, 2005, Mizichko was working the night shift at Linden High School. That evening, a scheduled dance recital required that students change outfits in several classrooms. At one point, Mizichko entered a room where several female students were changing. He proceeded to clean the glass panes on the door and ignored the pleas of the students to leave, as they were in the midst of changing their outfits. A teacher informed Mizichko that it was improper for him to be in the classroom when female students were changing and instructed him to leave the area. Mizichko eventually left the room.

Robert Kratzer, the head custodian at Linden High School, had previously posted signs informing Mizichko that certain classrooms would be used as changing rooms on the night of the incident. He explained that the evening supervisor had instructed Mizichko to knock and yell "custodian" before entering a female area, and that if he unknowingly entered a changing room, he should immediately walk out of the room.

Mizichko acknowledged he was aware that certain rooms would be used as changing rooms during the dance recital, and that he had been instructed not to enter those rooms. He stated that earlier in the evening he had cleaned other classrooms that were designated as changing rooms and that after he had knocked, he found them to be empty. Mizichko admitted encountering a few students in one room while he was cleaning the inside glass panes on the door, but stated he was unaware that those students were undressing. He also admitted that when a teacher told him to leave, he hesitated and asked "[W]hat's the big deal?"

After the incident was reported to the Board, the Superintendent placed Mizichko on paid suspension. The Board reported the incident to the Division of Youth and Family Services (Division). On October 6, 2005, the Division notified the Board that it would not take any action and closed the file. The Board then conducted its own internal investigation into the incident. As a result of that investigation, on November 16, 2005, the Board voted to terminate Mizichko's employment.

Thereafter, the Association filed a grievance on Mizichko's behalf contesting his termination pursuant to the Collective Negotiating Agreement (Agreement). Because Mizichko had already begun his fourth year of employment, he enjoyed contractual tenure pursuant to the Agreement. The parties were unable to come to a satisfactory resolution of the dispute, and on January 30, 2006, the Association filed a written request for arbitration with the Public Employment Relations Commission.

The Agreement provided that an employee with contractual tenure "shall not be disciplined, discharged or not reappointed without just cause. Grievances regarding the above shall be subject to binding arbitration under the terms of this Agreement." The parties submitted the following questions to the arbitrator: "Did the Board of Education have just cause to terminate the employment of John Mizichko? And, if not, what shall be the remedy?"

The arbitration procedure outlined in the Agreement required the arbitrator to set forth in writing "the findings of fact, reasoning, and conclusions on the issues submitted[.]" Additionally, the arbitrator had no power to make any decision that would "amend or modify the terms of [the] Agreement[.]" Further, the Agreement provided that the decision of the arbitrator was "final and binding [on] the parties."

After conducting a hearing, the arbitrator rendered his written decision. The arbitrator found that the employee was working while facing away from the students cleaning the glass and that his presence in the room was motivated by a singular desire to get his work done. Additionally, he found the Board met its burden by a preponderance of credible evidence that: the employee knew of the existence of a pertinent rule; the rule was reasonably related to the business of the employer; the employee knew or should have known the possible consequences of the violation of the rule; and there was just cause for the imposition of discipline. The arbitrator next discussed just cause when termination is imposed, explaining that:

> [J]ust cause, where the employer has imposed termination for the offense the Grievant has committed, further requires that the penalty fit the infraction and not be disproportionate given the totality of the circumstances, including mitigating factors. In the Arbitrator's opinion, the Board has not proven that termination of Mizichko's employment is appropriate.
>
> * * *
>
> [T]he Arbitrator considers progressive/corrective discipline to be an integral part of the just cause concept. In this regard, the termination of the Grievant's employment for a first offense, absent evidence that his misconduct was egregious, is inconsistent with the standards of arbitral jurisprudence. In the Arbitrator's opinion, the degree of discipline administered by the Board is not reasonably related to the offense and disproportionate to the gravity of the Grievant's misconduct.

Considering the evidence in its entirety, the arbitrator concluded that the appropriate sanction was a ten-day suspension without pay.

The Board filed a complaint in the Law Division seeking to vacate the arbitration award. In response, the Association filed an answer and counterclaim to confirm and enforce the award.

After the parties filed cross-motions for summary judgment, the trial court confirmed the award. The court interpreted the arbitrator's opinion as not having found just cause to terminate his employment, but instead as having found the requisite amount of just cause to impose some form of discipline. Consequently, the trial court found that the arbitrator was within his authority to impose a lesser penalty than termination.

The Board appealed. In an unpublished opinion, the Appellate Division reversed the trial court's judgment with one member of the panel dissenting. The majority interpreted the arbitrator's decision as having found that there was just cause to terminate the employee. Therefore, consistent with *County College of Morris Staff Ass'n v. County College of Morris*, 100 *N.J.* 383, 495 *A.*2d 865 (1985), the arbitrator had no authority to consider the remedy. The dissent disagreed that *County College of Morris* controlled, because the Agreement in the present case did not define just cause for termination as it did in *County College of Morris*. *See County Coll. of Morris, supra,* 100 *N.J.* at 387, 495 *A.*2d 865. The dissent concluded that the arbitrator's finding that termination was a disproportionate penalty, and that suspension was the appropriate sanction, was "within the exercise of his expertise and judgment, [and] filled the gaps in the [Agreement's] disciplinary guidelines." (internal quotation marks omitted).

The Association appealed to this Court as of right based on the dissent in the Appellate Division. *R.* 2:2–1(a)(2). We granted amicus curiae status to the I.F.P.T.E. Local 195 and the New Jersey School Boards Association.

## II.

The Association maintains the arbitrator found that the Board did not establish good cause to terminate Mizichko, and the majority of the panel failed to distinguish between that finding and the finding that there was just cause to discipline him. The Association argues that this Court's decisions in *Local No. 153, Office & Professional Employees International Union v. The*

*Trust Co. of New Jersey,* 105 *N.J.* 442, 453, 522 *A.*2d 992 (1987), *Scotch Plains–Fanwood Board of Education v. Scotch Plains– Fanwood Education Association,* 139 *N.J.* 141, 158, 651 *A.*2d 1018 (1995), and *New Jersey Turnpike Authority v. Local 196, I.F.P.T.E.,* 190 *N.J.* 283, 304, 920 *A.*2d 88 (2007), all support its position, because in each of those cases the Court upheld an arbitrator's decision to reinstate an employee who had been terminated. Further, the Association agrees with the approach of the dissent in the Appellate Division, distinguishing *County College of Morris* from this case.

In contrast, the Board argues that *County College of Morris* is controlling, because the facts in that case "are virtually identical" to the facts here. Consequently, the Board contends that once the arbitrator decided that there existed just cause for termination, it was beyond the arbitrator's authority to order reinstatement. The Board argues that if the parties had desired a system of progressive discipline, they would have negotiated such a provision in the Agreement. The Board asserts that "[t]here were no 'gaps' in the Agreement" for the arbitrator to fill. Further, the Board distinguishes *Local 153.* In that case, the arbitrator found that just cause for termination did not exist, whereas here, the arbitrator found that there was just cause for termination.

Amicus Local 195 essentially supports the Association's position. Further, it argues that *County College of Morris* has effectively been overruled by subsequent court decisions and the Legislature's amendment to *L.* 1996 *c.* 115 § 4 (*N.J.S.A.* 34:13A–5.3 (1996)), which emphasizes that courts "shall be bound by a presumption in favor of arbitration" in interpreting collective bargaining agreements.

Amicus New Jersey School Boards Association essentially agrees with the Board's position and emphasizes the need to protect the safety and welfare of students in New Jersey.

### III.

Preliminarily, we state several general principles regarding the field of arbitration. New Jersey jurisprudence favors "the

use of arbitration to resolve labor-management disputes." *N.J. Tpk. Auth., supra*, 190 *N.J.* at 291, 920 *A.*2d 88 (citations omitted); *Bd. of Educ. of Alpha v. Alpha Educ. Ass'n*, 190 *N.J.* 34, 41, 918 *A.*2d 579 (2006) (citations omitted). Arbitration is intended to provide "a speedy and inexpensive" means to settle disputes. *Bd. of Educ. of Alpha, supra*, 190 *N.J.* at 42, 918 *A.*2d 579. We have emphasized that "[r]esolution through arbitration should be the end of the labor dispute, not a way-station on route to the courthouse." *State, Office of Employee Relations v. Commc'ns Workers of Am.*, 154 *N.J.* 98, 111, 711 *A.*2d 300 (1998); *N.J. Tpk. Auth., supra*, 190 *N.J.* at 292, 920 *A.*2d 88 (noting "arbitration is meant to be a substitute for and not a springboard for litigation") (citation and internal quotation marks omitted).

Moreover, "[a]rbitration is a vehicle by which meaning and content are given to the collective bargaining agreement." *Local 153, supra*, 105 *N.J.* at 452, 522 *A.*2d 992 (citation and internal quotation marks omitted). Although the arbitrator may not contradict the express language of the contract, "it is the arbitrator's construction that is bargained for[,]" and "[i]t is the arbitrator's role to fill the gaps[.]" *Ibid.* Indeed, when addressing issues of just cause, "[t]he weight of arbitral opinion is that a standard of just cause may be imposed upon disciplinary actions even though such a standard is not spelled out in the agreement." *Scotch Plains–Fanwood Bd. of Educ., supra*, 139 *N.J.* at 157, 651 *A.*2d 1018 (citation and internal quotation marks omitted).

In promoting a sense of finality, there is "a strong preference for judicial confirmation of arbitration awards." *Middletown Twp. PBA Local 124 v. Twp. of Middletown*, 193 *N.J.* 1, 10, 935 *A.*2d 516 (2007) (citation and internal quotation marks omitted). Judicial review of an arbitration award is very limited, and "the arbitrator's decision is not to be cast aside lightly." *Bd. of Ed. of Alpha, supra*, 190 *N.J.* at 42, 918 *A.*2d 579 (citations omitted). In the public sector, an arbitrator's award will be confirmed "so long as the award is reasonably debatable." *Middletown Twp. PBA Local 124, supra*, 193 *N.J.* at 11, 935 *A.*2d 516

(citations and internal quotation marks omitted). Consistent with the reasonably debatable standard, "a reviewing court may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's interpretation." *N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union,* 187 *N.J.* 546, 554, 902 *A.*2d 209 (2006) (citation omitted).

The New Jersey Arbitration Act, *N.J.S.A.* 2A:24–1 to –11, dictates that a reviewing court may vacate an arbitration award in the following instances:

a. Where the award was procured by corruption, fraud or undue means;

b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;

c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

[*N.J.S.A.* 2A:24–8(a)–(d).]

### III.

We turn now to apply those principles to the arbitrator's decision in the present matter. The dispute between the parties centers around the interpretation of the arbitrator's award. The parties asked the arbitrator, "Did the Board of Education have just cause to terminate the employment of John Mizichko? And, if not, what shall be the remedy?" The Association contends that the arbitrator found there was no just cause to terminate, and that once he made that decision, the arbitrator appropriately imposed a fair sanction. We agree.

The Agreement did not define just cause, nor was there anything in the questions submitted that limited the power of the arbitrator to fill in the gap and give meaning to that term. The questions submitted imply that a remedy other than termination would be appropriate, because if the arbitrator did not find just

cause to terminate, the parties asked the arbitrator to both fashion and impose an appropriate remedy.

In answering whether the termination of Mizichko was for just cause, the arbitrator first explained that, in general, "just cause . . . requires that before an employee is *disciplined* that employee should know of the existence of a pertinent rule, that the rule is reasonably related to the business of the employer, and the employee knew or should have known the possible consequences of the violation of the rule." (emphasis added). Although the arbitrator found that the facts supported a finding that there was just cause for discipline, he also concluded that those facts alone were insufficient to justify a finding of just cause that would result in termination. The arbitrator then declared that when termination is imposed, just cause "requires that the penalty fit the infraction and not be disproportionate given the totality of the circumstances, including mitigating factors[,]" and that "the Board has not proven that termination of Mizichko's employment is appropriate."

Just cause was not defined in the Agreement, and therefore it was necessary for the arbitrator to give meaning to the term. The arbitrator did that. In our view, the fair and reasonable interpretation of the arbitrator's decision is that the arbitrator found there was no just cause to terminate the employee. That decision is reasonably debatable, and therefore, the trial court properly confirmed the award.

In light of our interpretation of the arbitrator's decision, we find that *County College of Morris* is readily distinguishable. In that case, the contractual language defined the circumstances constituting just cause for termination, and the arbitrator expressly found just cause to terminate the employee. *County Coll. of Morris, supra*, 100 *N.J.* at 392–93, 495 *A.2d* 865. The arbitrator then concluded that the contract should be construed to require a less severe form of discipline, because the employee had received no warning that his employment was in jeopardy. *Id.* at 394–95, 495 *A.2d* 865. We held that the arbitrator exceeded his authority in

ordering suspension, because he neglected to discharge the employee pursuant to the agreement of the parties. *Id.* at 393, 495 A.2d 865. Rather, once he identified a sufficient violation of the rules to warrant termination, he reduced the penalty of discharge to one of suspension. *Ibid.* Nevertheless, although not necessary to decide the appeal, we added the following:

> It is of no moment that the parties' contract did not provide specifically for discipline short of discharge[.] Had the facts supported such a conclusion, the arbitrator could ... have found that [the employee] was not guilty of the offenses[.] *Even after finding the employee guilty of the specified charges of misconduct, the arbitrator was free to apply his special expertise and determine that these offenses do not rise to a level of misconduct that constitutes just cause for discharge. ...* Had the arbitrator so concluded, we assume that the proper remedy would have been a disciplinary penalty less severe than that of discharge.
> [*Id.* at 393–94, 495 A.2d 865 (emphasis added).]

Unlike in *County College of Morris,* the Agreement here did not define just cause for discharge. Moreover, as the above quote suggests, the expertise of the arbitrator was sought, and the arbitrator was free to determine that the misconduct did not rise to a "level ... that constitutes just cause for discharge." *Id.* at 394, 495 A.2d 865. In short, we are satisfied that the arbitrator acted in full compliance with the submission of the parties.

Beyond that, the questions submitted to the arbitrator in the present case are identical to the questions posed in *Local 153, supra,* 105 *N.J.* at 446, 522 A.2d 992. In that case, the bank fired one of its employees "for cashing a forged check." *Id.* at 444, 522 A.2d 992. The union challenged the termination, asserting there was no just cause to terminate. *Id.* at 446, 522 A.2d 992. The parties submitted the issue for arbitration and asked the following questions: "[w]as there just and sufficient cause to terminate [the employee] under the terms of the labor agreement ...? If not, what shall be the remedy?" *Ibid.* The collective bargaining agreement provided "that there shall be no discharge except for just and sufficient cause[,]" but did not define just cause. *Id.* at 451, 522 A.2d 992. The arbitrator, citing both the employee's long-term service with the bank and her good record, found that termination was too harsh a penalty, ultimately imposing a period

of suspension without pay and reimbursement. *Id.* at 446–47, 522 *A.*2d 992. The trial court upheld the portion of the award ordering reinstatement, but vacated the reimbursement remedy. *Id.* at 447, 522 *A.*2d 992. The Appellate Division affirmed. *Ibid.* We granted certification and reinstated the arbitrator's award. *Id.* at 447, 453, 522 *A.*2d 992. We held that there was "nothing in the collective bargaining agreement that limits the arbitrator to a choice between termination and reinstatement" or to fashion a remedy. *Id.* at 451, 522 *A.*2d 992. We also noted that *County College of Morris* did not control, because the arbitrator did not find there was just cause to terminate. *Ibid.* Similarly, in the present case we find that the facts are more like those found in *Local 153* and not controlled by *County College of Morris.*

Lastly, we note that our conclusion in this matter is in accord with federal jurisprudence. Our courts look to federal arbitral decisions, and we "repeatedly consult[ ] [those decisions] for guidance." *N.J. Tpk. Auth., supra,* 190 *N.J.* at 292, 920 *A.*2d 88 (citation omitted). For example, in *United Transportation Union Local 1589 v. Suburban Transit Corp.,* 51 *F.*3d 376, 378 (3d Cir.1995), the collective bargaining agreement (CBA) required "proper cause" to discharge an employee. The employee bus driver was terminated after "his third preventable rear-end collision" and twenty-fourth accident in his twelve years of employment. *Id.* at 379. The union filed a grievance on the employee's behalf, and the matter proceeded to arbitration in accordance with the CBA, which provided that the arbitrator "shall not have any authority whatsoever to alter, amend or modify any of the provisions of this agreement." *Ibid.* The arbitrator determined that termination was too harsh a penalty and imposed a lesser sanction. *Ibid.* The district court vacated the arbitrator's award, because the arbitrator had improperly read a requirement for progressive discipline into the CBA. *Id.* at 380. The Third Circuit reversed, reasoning that

> the arbitrator did not impermissibly "read into" the parties' agreement terms that were not there. Rather, the arbitrator simply interpreted the ambiguous term "proper cause" in a manner unsatisfactory to management. The CBA allows [the

employer] to discipline or discharge for "proper cause" ... but does not define the phrase. When the grievance was submitted to arbitration, the arbitrator was forced to decide what "proper cause" meant[.]

⸓ ⸯ ⸰

[T]he parties bargained for contractual ambiguity instead of defining "proper cause" in the CBA. Having decided not to define the phrase, [the employer] cannot escape the results of that bargain simply because the arbitrator has chosen to interpret that phrase differently than [the employer] may have wanted—even if [the employer]'s interpretation of the CBA is more reasonable than the result announced by the arbitrator ... [T]he arbitrator's interpretation of the phrase "proper cause" did, in effect, impose a progressive discipline system upon the parties ... such a result can be a justified interpretation of a "just cause" provision.

[*Id.* at 380–81 (citations omitted).]

The contractual language drives our decision. The parties did not define "just cause" in the Agreement, and the arbitrator needed to fill in the gap and give meaning to the words "just cause." The arbitrator did so. He concluded that "progressive/corrective discipline [was] an integral part of the just cause concept[,]" and that the employee's misconduct was not so egregious to support just cause to terminate. Once the arbitrator reached that conclusion, consistent with the issues presented by the parties, he imposed discipline upon the employee. The arbitrator's determination in that regard satisfied the reasonably debatable standard and did not exceed the limits of his authority.

## IV.

We reverse the judgment of the Appellate Division and remand for reinstatement of the arbitration award.

JUSTICE RIVERA–SOTO, concurring in the result.

Although I agree with my colleagues that the correct resolution of this appeal is to reverse the judgment of the Appellate Division and reinstate the arbitrator's award, I arrive at that conclusion via a different, but straighter path.

The parties in this case stipulated that the issues to be determined by the arbitrator—and, hence, what the arbitrator would

have jurisdiction to consider—included not only whether "the Board of Education ha[d] just cause to terminate the employment of John Mizichko" but also "if not, what shall be the remedy?"  By that latter inquiry, the parties vested in the arbitrator the authority to determine both whether discipline was to be imposed and, if so, the degree of discipline to be imposed.  Stated differently, by explicitly stipulating to the issues to be determined by the arbitrator, the parties waived any objection to the exercise of that jurisdiction.

We have made clear that "parties may waive their right to have a court determine the issue by their conduct or by their agreement to proceed in arbitration."  *Wein v. Morris*, 194 *N.J.* 364, 381, 944 *A.*2d 642 (2008) (citing *N.J. Mfrs. Ins. Co. v. Franklin*, 160 *N.J.Super.* 292, 300, 389 *A.*2d 980 (App.Div.1978)).  In determining whether, in the arbitral context, a waiver is presented,

the court should consider the totality of circumstances to evaluate whether a party has waived the right to object to arbitration after the matter has been ordered to arbitration and arbitration is held.  Some of the factors to be considered in determining the waiver issue are whether the party sought to enjoin arbitration or sought interlocutory review, whether the party challenged the jurisdiction of the arbitrator in the arbitration proceeding, and whether the party included a claim or cross-claim in the arbitration proceeding that was fully adjudicated.

[*Id.* at 383–84, 944 *A.*2d 642.]

A straightforward application of those principles to the facts in this case yields a simple result:  because the parties agreed to submit to arbitration not only whether discipline should be imposed, but also the quantum of discipline to be imposed, and because, until the award was issued, the parties continued participating in that arbitration without protest or objection, plaintiff Linden Board of Education cannot now be heard to complain that, in respect of the remedy imposed, the arbitrator exceeded his powers in violation of the Arbitration Act, *N.J.S.A.* 2A:24–1 to –11.  In short, plaintiff affirmatively waived any challenge to the arbitrator's power when it specifically authorized the arbitrator to determine, if discipline short of termination was appropriate, what the extent of that discipline would be.  If plaintiff truly was of the view it now advances on appeal—that, once the arbitrator deter-

mined that there was sufficient cause to discipline John Mizichko, the amount of the discipline (termination) imposed by plaintiff was not subject to review—it simply should not have authorized the arbitrator to determine also (1) that termination of Mizichko's employment was inappropriate and (2) short of termination of employment, "what shall be the remedy?"

In colloquial terms, plaintiff made its own bed, and it now should lie in it. Because, in my view, plaintiff has waived the objection it now pursues on appeal, this Court need not parse out what the arbitrator did or did not do; outright enforcement of the parties' own agreement to arbitrate, on its explicit terms, more than suffices to justify reinstatement of the arbitrator's award.

*For reversal and remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—6.

Justice RIVERA–SOTO, concurs in result.