**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4232-16T3

STATE-OPERATED SCHOOL
DISTRICT OF THE CITY OF
NEWARK,

      Plaintiff-Respondent,

v.

JOEL DAWKINS,

      Defendant-Appellant.

_____

Argued December 19, 2018 – Decided March 13, 2019

Before Judges Ostrer and Currier.

On appeal from Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000012-17.

Stuart Ball argued the cause for appellant (Stuart Ball, LLC, attorneys; Stuart Ball and Andrea L. Maddan, on the briefs).

Brenda C. Liss argued the cause for respondent (Riker Danzig Scherer Hyland & Perretti, LLP, attorneys; Brenda C. Liss, of counsel and on the brief; Ashley N. Higginson and Stephen M. Turner, on the brief).

PER CURIAM

Defendant Joel Dawkins, a teacher formerly employed by plaintiff State-Operated School District of the City of Newark[1] (plaintiff or District), appeals from the May 16, 2017 Chancery Division order in which the court reversed the arbitration award in favor of defendant after finding the award was procured by "undue means." In light of the limited judicial review accorded an arbitrator's decision, we disagree that the record supported the finding of undue means. We therefore reverse and reinstate the arbitration award.

The facts were derived from several days of arbitration hearings. Defendant, a tenured teacher, was employed by the District for more than twenty years. Certified in mathematics, defendant taught math at Westside High School, where he remained for the first seventeen years of his career. He was subsequently transferred to another high school for one year and then to a third high school, where he remained for three years, still teaching math.

In the fall of 2013, defendant was transferred to Sussex Avenue School (Sussex), which served pre-kindergarten through grade eight students.

---

[1] Effective February 1, 2018, the State-Operated School District of Newark was abolished and the Board of Education of the City of Newark acquired all powers, authority, and responsibility provided by law to control the Newark Public Schools.

Defendant was assigned to "playground duty in the morning, recess, lunch, helping with the lunch lines and so forth." Defendant was also required to paint the lines in the school and assist as a gym teacher.

Eventually, defendant was assigned to teach eighth grade math in Sussex because "they were having trouble with the kids in the [eighth] grade classes." The principal of Sussex instructed defendant to take the students who were causing problems and "keep them away from the general population." These students were restricted to defendant's classroom for the entire school day and "were never allowed to interact with the school." The students were not evaluated by a child study team nor given individualized education programs (IEPs).

While at Sussex, defendant was placed on a corrective action plan (CAP), to address improvement in several areas, including mathematics goals and student growth and proficiency goals. See N.J.A.C. 6A:10-2.5(e). The principal observed defendant's classroom performance twice, once each during a short and a long observation period. Although the observation summary forms

reflect defendant received more "effective" marks than "partially effective" marks, the principal rated defendant as "partially effective" overall.[2]

In January 2014, defendant was injured when he tried to break up a fight between two students. When he returned to work the following month, defendant requested a high school position. Defendant was transferred to Weequahic High School (Weequahic), where he was assigned to teach ninth and twelfth grade math. A CAP was developed with goals geared to the high school assignment and student learning goals for the remainder of the school year. The vice-principal of mathematics and science at Weequahic acknowledged the ninth grade classes were "difficult."

That spring, two different administrators observed defendant three times, one evaluator during two long observations and the second administrator during a short observation.[3] However, defendant was only observed teaching the ninth grade classes; there were no observations of the twelfth grade class.

---

[2] An Annual Summary Evaluation (ASE) measures a teacher's performance through the assessment of five competencies. Teachers are rated "highly effective," "effective," "partially effective," or "ineffective." Each rating is assigned points. Overall ratings for a teacher's ASE are calculated by adding the points scored in each competency.

[3] The regulations require three periods of observation. See N.J.A.C. 6A:10-2.5(h); N.J.A.C. 6A:10-4.4(c)(3).

Furthermore, two of the observations occurred on consecutive days and the third took place two weeks later. On all three observations, defendant was rated as "partially effective." Defendant's mid-year review also rated him as "partially effective."

Plaintiff did not have a functioning school improvement panel (SIP), required under TEACHNJ,[4] to ensure teachers received proper evaluations. Further, the evaluating administrators did not develop an independent evaluation score for defendant based on the growth and development of his students (SGOs).[5]

Weequahic was closed prior to the school year of 2014-15, and reopened as three different schools. Defendant was reassigned to one of the new schools – Girls Academy of Newark (Girls' Academy). However, prior to the new assignment, defendant was approved for a leave of absence due to a medical condition and was not scheduled to return until January 2015.

Upon defendant's return, he was initially assigned a supporting role and did not receive his own class until March 2015, teaching sixth grade

---

[4] The Teacher Effectiveness and Accountability for the Children of New Jersey (TEACHNJ) Act seeks to improve student achievement by adopting specific evaluations for educators. See N.J.S.A. 18A:6-117 to -129.

[5] N.J.A.C. 6A:10-4.2(e); N.J.A.C. 10-3.2(a)(4).

mathematics. At Girls' Academy, two different evaluators observed defendant four times. A long and short observation took place on the same day - March 18, 2015; a second long observation took place on May 1 and a second short observation took place on May 11, 2015.

Between the second and third observations, a CAP was developed. It added two new student learning goals and included the same professional growth areas identified in the previous year's CAP. There was no formula for determining student growth and improvement. Defendant was rated as "partially effective" in three of the observations and "ineffective" on the fourth. The April 10 mid-year review and May 12, 2015 annual evaluation rated defendant as "partially effective."

TEACHNJ controls the procedural processes for tenure teacher charges under the Tenure Employees Hearing Law (TEHL), N.J.S.A. 18A:6-10 to -18.1. A tenured teacher may not be dismissed "except for inefficiency . . . and then only after a hearing." N.J.S.A. 18A:6-10. Under TEHL, tenure charges based upon inefficiency must be filed against a teacher if he or she receives a "partially effective" ASE in one year and an "ineffective" ASE in the following year. N.J.S.A. 18A:6-17.3(a)(1).

A-4232-16T3

Because defendant was rated "partially effective" on two consecutive annual evaluations, plaintiff filed inefficiency tenure charges in August 2015. After the Commissioner of Education determined the inefficiency charges warranted dismissal, the matter was referred to an arbitrator. N.J.S.A. 18A:6-16.

Following several days of hearings, the arbitrator issued a forty-two page decision, noting the scope of his review of a charge of inefficiency under TEHL. As the arbitrator noted, in his review he must first consider whether the teacher has demonstrated one of four delineated factors, including whether the evaluation of the teacher failed to adhere substantially to the evaluation process or whether the District's actions were arbitrary or capricious. If one factor is satisfied, the arbitrator determines whether the facts materially affected the outcome of the evaluations. If the arbitrator concludes there was no material effect, a decision must issue in favor of the District.

In a comprehensive review of the evidence, the arbitrator concluded the District's actions in 2013-14 were arbitrary and capricious, contrary to N.J.S.A. 18A:6-17.2(a)(4). Despite having more than twenty years of experience teaching high school math, defendant was transferred to a middle school, where he was initially "assigned lunch and playground duty, and painting lines on the

playground," and then assigned to work as an assistant gym teacher. Even when defendant received a class, the principal conceded the particular Sussex students were troublemakers and she instructed defendant to "keep [those students] away from the general population."

The arbitrator also considered the numerous irregularities in the District's implementation of its evaluative process and the CAPs. For instance, the arbitrator noted defendant's CAP was established at Sussex, where he taught for less than three months. Thereafter, defendant was reassigned to Weequahic. The arbitrator found the "CAP [defendant] developed at [Sussex] became inapplicable to . . . his [ASE] upon his reassignment." "[The] ASE was incomplete at best," as the CAP developed at Sussex "could not be measured by anything that occurred at the high school."

While at Weequahic, defendant taught ninth and twelfth grade math. Despite the vice-principal conceding the ninth grade class was "challenging and difficult" and describing the other classes as more successful, the vice-principal only observed the ninth grade students. The arbitrator found this was an additional failure by the District to adhere to the evaluative process. In addition, defendant only taught from late March to mid-June with his annual evaluation taking place on May 15, 2014. The arbitrator noted conducting the required

evaluation procedures in a compressed two-month period does not permit a teacher to show improvement or receive guidance on his or her weaknesses. See N.J.S.A. 18A:6-123(b)(3); N.J.A.C. 6A:10-4.4(b)(2). The arbitrator noted observing defendant on two consecutive days was ineffective and undermined the objective of the evaluative process. See N.J.A.C. 6A:102.5(h); N.J.A.C. 6A:10-4.4(b)(2).

Finally, in concluding the District's actions were arbitrary and capricious, the arbitrator remarked on the lack of a SIP. The Weequahic vice-principal knew there was an SIP, but was ignorant of its purported function.

In addressing the evidence presented regarding the 2014-15 school year, the arbitrator concluded the District had acted arbitrarily and capriciously under N.J.S.A. 18A:6-17.2(a)(4). As in the prior year, defendant did not receive a regular class until mid-March 2015 at Girls' Academy. The annual evaluation conducted in mid-May, again only measured defendant's performance over a two-month period.

The arbitrator also found the evaluations at Girls' Academy again were only over a two-month period and the observations took place in the same classroom, at the same time, on the same day. In addition, the last observation

occurred the final day before the annual evaluation, again preventing any meaningfulness to the process.

Similar to the 2013-14 year, the arbitrator determined the administrators failed to adhere to the evaluative process by not considering the SGO based on the available student data and on growth achievement.

After concluding the District had substantially failed to comply with the procedural requirements in evaluating defendant as well as finding arbitrary and capricious actions, the arbitrator turned to the second prong of the statute. He determined the District's failure and capricious actions materially affected the outcome of defendant's evaluations. See N.J.S.A. 18A:6-17.2(a) and (b). Throughout his decision, the arbitrator referred to these specific actions, including: 1) numerous, random, and unexplained assignments for all levels of students after more than twenty years teaching high school math; 2) the development of CAPs that had no relevance following a transfer to different level students after only three months of its implementation; and 3) the compressed period of evaluations with observations occurring on consecutive days and even on the same day, the same grade level, and at the same time.

A-4232-16T3

The arbitrator issued an award in favor of defendant finding the District's failure to comply with the statutory procedure for conducting teacher evaluations materially affected the ASEs.

The District subsequently filed an Order to Show Cause and a verified complaint in the Superior Court, requesting to vacate the arbitration award. In a May 16, 2017 oral decision, the trial judge vacated the award under N.J.S.A. 2A:24-8(a), determining the arbitration decision was procured by "undue means." The judge found the arbitrator had failed to apply the standard of review required for a tenure charge and did not analyze whether the errors the arbitrator found had "a material effect on the outcome of the evaluation," other than "a fleeting reference to materiality, which [was not] a clear . . . reference to [N.J.S.A. 18A:6-17.2(b)]." The case was remanded to the Commissioner for the appointment of a different arbitrator.

On appeal, defendant argues the trial court erred in 1) according the required deference to the arbitrator's decision; 2) misconstruing and misapplying the applicable statute; 3) failing to recognize the tenure charges lacked the required legal basis; and 4) finding the reference to "just cause" and "cause" in the arbitrator's decision reflected a mistake of law.

"Judicial review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). "An arbitrator's award is not to be cast aside lightly. It is subject to being vacated only when it has been shown that a statutory basis justifies that action." Ibid. (quoting Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979)). Where, as here, the arbitration is compelled by statute, "judicial review should extend to consideration of whether the [arbitration] award is supported by substantial credible evidence present in the record." Division 540, Amalgamated Transit Union AFL-CIO v. Mercer Cty. Improvement Auth., 76 N.J. 245, 254 (1978).

Our review of the trial court's decision to vacate the arbitration award is de novo. Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010). Here, the Chancery judge relied on N.J.S.A. 2A:24-8(a) to vacate the award, finding it was procured by undue means. The judge refers to two references in the forty-two page arbitration decision. On page thirty-two, after a detailed discussion of TEHL and its procedure for the District to sustain tenure charges, the arbitrator states: "I have carefully examined the testimony and other evidence in this matter. Based on my examination I find the District did not

have just cause to discharge [defendant].  I so find for several reasons." (emphasis added).

On the final page of the decision, the arbitrator wrote: "Accordingly, I find the observations/evaluations and Annual Summative Evaluations were material because without valid SGOs and Annual Summative Evaluations there can be no statutory basis for charges against [defendant].  For the reason delineated herein, I find the District did not have cause to discharge [defendant]." (emphasis added).

To constitute undue means, "[t]he judicial inquiry must consider more than whether a mere mistake occurred."  Minkowitz v. Israeli, 433 N.J. Super. 111, 150 (App. Div. 2013).  As we stated in Bound Brook Bd. of Educ. v. Ciripompa, 442 N.J. Super. 515, 524 (App. Div. 2015),

> [Undue means] requires that the arbitrator[ ] must have clearly intended to decide according to law, must have clearly mistaken the legal rule, and that mistake must appear on the face of the award.  In addition, the error, to be fatal, must result in a failure of intent or be so gross as to suggest fraud or misconduct.

We discern no mistake of fact or law on the face of the award, nor an error that is "so gross as to suggest fraud or misconduct."  Ibid.  The arbitrator referenced TEACHNJ and TEHL and performed the requisite statutory analysis. The arbitrator referred to the two-pronged test under TEHL and the District's

13

burden to sustain tenure charges.[6]  The arbitrator made specific findings as required under N.J.S.A. 18A:6-17.2(a) and (b).  There can be no mistake that the arbitrator relied on the proper statute in making his findings and analysis and when rendering his award.  There were no proofs to vacate the award under grounds of undue means.

We also reject the trial court's categorization of the arbitrator's "passing reference" to the materiality of the District's actions.  The arbitrator made detailed findings supporting his conclusion that the District failed to substantially adhere to the evaluation process.  He also described the District's arbitrary and capricious actions during the process.  The arbitrator concluded the errors were material and the District's deficiencies in the evaluative process were "material."

Therefore, the arbitrator made the requisite findings and conclusions under N.J.S.A. 18A:6-17.2.  Although at times unartful, it is clear a reading of the decision as a whole demonstrates its compliance with the statutory requirements necessary to support its award.

---

[6] "The board of education shall have the ultimate burden of demonstrating to the arbitrator that the statutory criteria for tenure charges have been met." N.J.S.A. 18A:6-17.2(d).

The order vacating the arbitration award is reversed and the award is reinstated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4232-16T3