<div style="border:1px solid black; padding:10px;">

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5087-17T1

CITY OF SOUTH AMBOY,
a Municipal Corporation of
New Jersey,

      Plaintiff-Appellant,

v.

MUNICIPAL EMPLOYEES
UNION OF SOUTH AMBOY,

      Defendant-Respondent.

_____

Argued May 22, 2019 – Decided June 20, 2019

Before Judges Reisner and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7343-16.

John R. Lanza argued the cause for appellant (Lanza & Lanza, LLP, attorneys; John R. Lanza and Monica A. Hoopes, on the briefs).

William P. Hannan, II, argued the cause for respondent (Oxfeld Cohen PC, attorneys; William P. Hannan, II, of counsel and on the brief).

PER CURIAM

Plaintiff City of South Amboy (the City) appeals from two orders dated March 28, 2018, denying its summary judgment motion seeking to vacate portions of an arbitration award, and granting summary judgment in favor of defendant Municipal Employees Union of South Amboy (MEUSA), confirming the award. Plaintiff also appeals from a June 22, 2018 order denying its motion for reconsideration. We affirm for the reasons stated by the trial judge in his oral opinions issued March 28 and June 22, 2018, and for the reasons stated below.

I

Because we are writing this opinion primarily for the benefit of the parties, who are fully familiar with the facts, a short background summary will suffice here. The dispute centers around health care issues addressed in paragraphs 1 and 2 of Article II of the 2014-2018 collective bargaining agreement (CBA). In the first sentence of paragraph 1, the City agreed, without any stated qualifications, that it would pay the full cost of providing employees and their families with health benefits. Next, subsections A through D listed the four types of coverage the City would provide. Finally, subsection E stated that the City could provide those four listed types of coverage through the New Jersey

2

State Health Benefits Program (SHBP).  In 2015, the City made the switch to the SHBP, as the CBA permitted.  However, the SHBP imposed a two-month waiting period for new employees and their families to obtain coverage.

The arbitrator determined that, because Article II, paragraph 1 did not include any specific provision permitting the City to delay providing coverage, the City was required to provide the coverage, even if that meant paying for separate coverage for the first two months.  Among other things, the arbitrator considered that the most recent previous CBA contained a specific provision permitting the City to delay providing coverage for new employees' families. He reasoned that the parties knew how to provide for such a delay if they agreed to it, and inferred that they reached no such agreement here.

The second issue focused on paragraph 2A of Article II, which provided that "[u]pon retirement of an employee covered by this Agreement, the City shall continue to provide medical coverage as set forth in Appendix B."  Appendix B of the CBA was a copy of City Ordinance #2-2010, providing that the City would extend paid health benefits to certain employees "who retire" with defined amounts of service credit.  The ordinance also provided that on reaching age sixty-five, a retired employee who is receiving employer-provided health coverage and who qualifies for Medicare "shall be entitled to receive Medicare

as primary coverage and City health insurance as secondary coverage." The next sentence provided: "Employee shall be responsible for the payment of Medicare Part B premiums." Based on that specific ordinance language, which was incorporated by reference and attached to the contract, the arbitrator concluded that employees who retire under the 2014-2018 CBA must pay their own Part B premiums. However, the arbitrator concluded that the 2014-2018 CBA did not apply to employees who had retired under the auspices of prior contracts, that is, employees who retired before the 2014-2018 CBA was ratified. He reasoned that the rights of those retirees were governed by the terms of whichever contract governed their employment at the time they retired.

MEUSA accepted the arbitration award, including provisions unfavorable to the union, while the City sought to vacate award provisions it found unfavorable. The trial judge concluded that the arbitrator's interpretation of the contract was reasonably debatable and the City did not satisfy any of the limited grounds set forth in N.J.S.A. 2A:24-8 for overturning an arbitration award. The judge later denied the City's reconsideration motion, noting that the City was largely recycling arguments the judge considered and rejected on the original motion. The judge also rejected the City's attempt to raise new substantive issues on the reconsideration motion.

On this appeal, the City contends that the arbitrator exceeded the scope of his authority in addressing the rights and obligations of retirees, the trial court should have considered the City's reconsideration arguments based on M & G Polymers USA, LLC v. Tackett, __U.S.__, 135 S. Ct. 926 (2015), and the arbitrator effectively rewrote the contract as it applied to "gap coverage" for new employees.  Our review of the trial court decision is de novo.  Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013).  By contrast, neither the trial judge nor this court may second-guess the arbitrator's interpretation of the CBA, so long as his construction of the contract is reasonably debatable.  Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 11 (2007).  "Consistent with the reasonably debatable standard, a reviewing court may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's interpretation."  Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 277 (2010) (citation omitted).  After reviewing the record with that standard in mind, we find no merit in any of the City's arguments.

We first address the City's argument about the scope of the arbitration, and whether it included the issue of retirees' right to payment for their Medicare

Part B benefits (the retiree issue). We were not provided with a transcript of the arbitration, presumably because no verbatim record was made. In addition, other than the list of issues to be arbitrated, the CBA, and a previous arbitration award, the parties have not placed before us any relevant documents submitted to the arbitrator, including their post-hearing briefs.

As a result, we are limited in our ability to determine what arguments the parties actually presented to the arbitrator or whether either side waived objection to the arbitrator considering those arguments. In the award, the arbitrator characterized the union's argument about payment of Medicare Part B premiums as having two parts, one applying to current employees and one applying to employees who retired before this CBA was ratified. Without a verbatim record of the arbitration, or copies of the post-arbitration briefs, we cannot meaningfully evaluate the City's argument that the arbitrator unexpectedly addressed the retiree issue sua sponte when neither side had raised the issue. See R. 2:6-1(a)(1); State v. Cordero, 438 N.J. Super. 472, 489 (App. Div. 2014). However, we will briefly address the issue.

We agree with the trial judge that the arbitrator had the authority to construe the CBA that was before him, and that the CBA clearly referred to retirees as well as current employees. The wording of the union's arbitration

issue was broad enough to encompass the issue of which retirees were covered by the Medicare Part B language of the CBA. That said, we conclude that the City's argument on the merits of the Medicare issue is based on a misreading of the arbitrator's award.

In his decision, the arbitrator did not state that all retirees who retired before this CBA was ratified (prior retirees) were entitled to have the City pay for their Medicare Part B premiums. Rather, the arbitrator merely stated the general legal proposition that the rights of prior retirees to specific retirement-related contractual benefits are controlled by the terms of the contracts that were in effect at the time they retired. Those prior CBAs were not before the arbitrator, and he was not called upon to construe their terms. The 2014-2018 CBA was before him, and he reasonably construed that CBA as applying to future retirees (those who retire after the contract was ratified), not prior retirees.

In fact, at oral argument on the reconsideration motion, the City's counsel agreed that "the retirees referred to [in the CBA] are the . . . employees who retire under this contract." By logical extension, that concession means that the contract does not require prior retirees to pay for their own Part B premiums, because it simply does not address the rights or obligations of prior retirees. On the flip side, in response to a question from the trial judge, MEUSA's counsel

conceded that if a prior employee had retired under a previous contract that required retirees to pay their own Part B premiums, the arbitrator's decision would not require the City to now pay that retiree's premiums. However, counsel also conceded that the arbitration record did not include all of the prior contracts.

Based on the record discussed above, we affirm the trial judge's decision to confirm the arbitration award relating to Medicare Part B premiums. We also find no abuse of the trial judge's discretion in denying the motion for reconsideration. See In re Belleville Educ. Ass'n, 455 N.J. Super. 387, 405 (App. Div. 2018). In particular, we find no abuse of discretion in the judge's refusal to consider legal issues the City raised for the first time on reconsideration. Those issues include the substantive effect of the City's healthcare ordinance on the existing contract rights of prior retirees, the impact of State legislation concerning health benefits on the rights of prior retirees, and the substantive impact of M & G Polymers, 135 S. Ct. at 937, on prior employees' rights under previous contracts. None of those issues were timely raised in the trial court, and they are not properly before us on this appeal.

III

We next address the issue of a waiting period for new employees and their families. In the trial court, the City conceded that the SHBP sets a floor, not a

8

ceiling, on what the City must provide. That is, the City was free to agree to provide benefits beyond those set forth in the SHBP.[1] The arbitrator determined that the City had, in fact, committed to provide such additional benefits when it agreed to provide healthcare to new employees and their families without specifying any waiting period. In making that determination, the arbitrator was not construing the SHBP or purporting to change its provisions. Rather, he was construing the CBA, the very function he was authorized to perform. We agree with the trial judge that the contract was ambiguous as to the timing of the benefits, and the arbitrator's interpretation was reasonably debatable.[2] See Linden Bd. of Educ., 202 N.J. at 276-77. That ends the inquiry.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] The trial judge indicated in his opinion that, at oral argument of the motion, the City conceded that the SHBP "only sets minimum coverage standards and that South Amboy is free to provide benefits in excess of the minimum standards provided for [by] the SHBP." Because the City did not provide us with the transcript of the summary judgment motion argument from November 17, 2017, we rely on the judge's characterization of the argument record.

[2] In response to our question at oral argument, counsel advised that the SHBP plan documents, which stated that there was a waiting period for benefits, were not appended to the CBA. By contrast, the City ordinance, providing that the City would not pay for Medicare Part B premiums, was included in the CBA as Appendix B and was referenced in the body of the contract. Thus, the CBA by its terms clearly incorporated the non-payment for Medicare Part B premiums, but contained no such clear notice of, or agreement to, the time delay for receiving health benefits.

A-5087-17T1