**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0430-19T1

LARHONDA RAGLAND,

    Plaintiff-Appellant,

v.

BOARD OF EDUCATION OF
THE CITY OF NEWARK,
ESSEX COUNTY,

    Defendant-Respondent.

_____

> Argued September 14, 2020 – Decided February 4, 2021
>
> Before Judges Currier and DeAlmeida.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000142-19.
>
> Stuart Ball argued the cause for appellant. (Stuart Ball, LLC, attorneys; Stuart Ball on the briefs).
>
> Brenda C. Liss argued the cause for respondent (Office of General Counsel and Riker Danzig Scherer Hyland & Perretti, LLP, attorneys; Brenda C. Liss, of counsel and on the brief; Stephanie D. Edelson, on the brief).

PER CURIAM

Plaintiff LaRhonda Ragland appeals from the August 26, 2019 order of the Chancery Division dismissing her complaint and confirming an arbitration award upholding teacher tenure charges against her. We affirm.

I.

The following facts are derived from the record. Ragland was employed by defendant Newark Board of Education (BOE) as an elementary school dance instructor. BOE evaluates its teachers based on a rubric approved by the State Department of Education (DOE). The rubric is comprised of five evaluation components, called competencies, including "student progress toward mastery," which is weighted most heavily. DOE granted BOE an equivalency that permits it to use the rubric, which differs slightly from the evaluation rubric established in N.J.A.C. 6A:10-4.1.

For the 2016-2017 school year, Ragland was evaluated by Vice Principal Regina Sharpe. She completed both Ragland's mid-year and summative end-of-year evaluations, rating her partially effective, a below par score, for both evaluations. In her comments, Sharpe noted that during her classroom observation Ragland's students appeared confused because she "lacked consistency" in her instructions by giving different and contradictory directions

regarding dance moves that were the subject of the class. Sharpe noted that it appeared Ragland "was making the choreography up right there" rather than having a clear lesson plan. According to Sharpe, during the school's midwinter concert, Ragland's students "were on the stage and it looked like they had just learned or were even, in some cases, still learning the dance moves . . . . [I]t was almost as if instruction was happening right there on the stage." The performance was intended to be "a showcase of what [the students] already learned." Although Ragland had an opportunity during the evaluation process to provide data showing student growth, she declined to do so. Sharpe noted that Ragland was resistant to constructive criticism, guidance, instructions, and strategies from administrators and other effective teachers.

Ragland was assigned a corrective action plan for the 2017-2018 school year. Ragland had primary responsibility for drafting the plan. Vice Principal Najran Cowins testified that she provided suggested edits to the plan emphasizing student growth metrics. Ragland did not incorporate those changes and failed to establish measurable goals for her students. Over the course of the school year, Ragland on occasion did not have concrete lesson plans, attend required meetings, respond to emails, or keep consistent grading. At one point,

all of Ragland's students were listed as failing and having the same grade for all assignments.

Cowins conducted Ragland's mid-year evaluation and rated her partially effective, noting a lack of measurable standards for student growth objectives. Ragland requested her remaining evaluations be done by someone else.

Vice Principal Sharanda Evans-Humes completed Ragland's year-end evaluation, rating her ineffective, the lowest possible score. According to Evans-Humes, Ragland failed to provide the full amount of student rubrics and had not taken steps to improve after the previous school year. After an evaluation conference, Evans-Humes gave Ragland an opportunity to supplement her student growth data with evidence in her possession, and reminded her of that opportunity several times, but Ragland declined to do so.

Following the second consecutive below par annual summative evaluation, BOE served Ragland with the tenure charge of inefficiency. She responded by letter, challenging the BOE's evaluation process. The BOE referred the matter to the Commissioner of the DOE. The Commissioner referred the matter to arbitration, having determined BOE followed its evaluation process.

A-0430-19T1

After seven days of testimony, the arbitrator upheld the tenure charge, finding BOE's witnesses to be credible and concluding that the "evidence is clear that all appropriate elements for a just and proper dismissal of [Ragland] were present . . . ." More specifically, the arbitrator found:

> [t]he evidence is convincing that [Ragland] demonstrated a blatant lack of cooperation, inattention or indifference to the necessary protocols of her teaching position . . . . [BOE's] evidence was replete with documentation and credible testimony concluding that ongoing and continued efforts over an extended time period attempted to correct [Ragland's] deficiencies.
>
> . . . .
>
> Moreover, the evidence . . . overwhelmingly demonstrated that the [BOE] adhered substantially to its evaluation process. While disputed by [Ragland], the only showing to support her theoretical insinuation and arguments against the validity of [BOE] evaluations and observations came in the form of cross[-]examination of [BOE] witnesses. The cross[-]examination was insufficient to overcome [BOE]'s proof.

The arbitrator also found that the alleged discrepancies between the regulatory requirements and the evaluations BOE performed were "de minimis mistakes in calculation or interpretation of the regulations . . . . Nonetheless, the alleged discrepancies were determined to actually be based upon the lack of cooperation of" Ragland.

5

Ragland thereafter filed an order to show cause and verified complaint in the Chancery Division, seeking to overturn the arbitration award. BOE cross-moved to dismiss the complaint and confirm the arbitration award.

The trial court issued an oral decision after hearing counsel's arguments. The court concluded that the award was supported by credible evidence and rejected Ragland's contention that BOE failed to abide by its evaluation rubric, in particular with respect to student growth objectives. The court explained that:

> [t]he school appears to have followed closely the obligations that it had under the regulations and did have permission by virtue of this equivalency letter to follow other procedures pursuant to the permission of the [DOE].
>
> [Given] the extreme deference that the [c]ourt is required to give the arbitrator in these sorts of cases, the [c]ourt is denying the application of [Ragland] and will grant the cross-motion of [BOE] to affirm the arbitration award.

An August 26, 2019 order memorializes the court's decision.

This appeal follows. Ragland raises the following arguments.

POINT I

THE ARBITRATOR AND THE CHANCERY JUDGE COMPLETELY FAILED TO CONSIDER AND ASSESS THE LEGAL SIGNIFICANCE OF THE HUGE ARRAY OF PROCEDURAL FAILURES BY THE DISTRICT IN ITS EVALUATION OF MS. RAGLAND.

A-0430-19T1

POINT II

THE NECESSARY LEGAL PREREQUISITES FOR THE CHARGES HERE ARE ENTIRELY ABSENT FOR BOTH YEARS AND THEREFORE THE CHARGES ARE INVALID.

POINT III

FAILURE TO IMPLEMENT THE LEGALLY MANDATED CORRECTIVE ACTION PLAN AND [INDIVIDUAL PROFESSIONAL DEVELOPMENT PLAN], INVALIDATE THE [ANNUAL SUMMATIVE EVALUATIONS] AND CHARGES FOR THE BOTH [SIC] SCHOOL YEARS.

POINT IV

THE DISTRICT'S FAILURES TO DEVELOP PROPER [ANNUAL SUMMATIVE EVALUATIONS] ARE NOT EXCUSED BY ANY WAIVER OR EQUIVALENCE.

POINT V

THE DECISION BELOW WAS INCORRECT AS A MATTER OF LAW AND WAS BASED ON A FATALLY FLAWED ARBITRATION DECISION.

II.

"Judicial review of an arbitration award is very limited, and 'the arbitrator's decision is not to be cast aside lightly.'" Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010) (quoting Bd. of

7

Educ. v. Alpha Educ. Ass'n, 190 N.J. 34, 42 (2006)).  Where, as here, arbitration is required by statute, "judicial review should extend to consideration of whether the award is supported by substantial credible evidence present in the record." Div. 540, Amalgamated Transit Union AFL-CIO v. Mercer Cty. Improvement Auth., 76 N.J. 245, 254 (1978).  Our review of the trial court's decision to uphold or vacate the arbitration award, however, is de novo.  Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010).

The Tenure Employees Hearing Law, N.J.S.A. 18A:6-10 to -18.1, provides tenured public school teachers "certain procedural and substantive protections from termination."  Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017).  No tenured public school teacher "shall be dismissed or reduced in compensation . . . except for inefficiency, incapacity, unbecoming conduct, or other just cause . . . ."  N.J.S.A. 18A:6-10.  If the charges are substantiated, they first go to the Commissioner of the DOE who then refers the matter to an arbitrator if the charges merit termination.  See N.J.S.A. 18A:6-11; N.J.S.A. 18A:6-16.

If the matter is before an arbitrator based on a teacher's charge of inefficiency, the arbitrator "shall only consider" the following four defenses:

(1) the employee's evaluation failed to adhere substantially to the evaluation process, including, but not limited to providing a corrective action plan;

(2) there is a mistake of fact in the evaluation;

(3) the charges would not have been brought but for considerations of political affiliation, nepotism, union activity, discrimination as prohibited by State or federal law, or other conduct prohibited by State or federal law; or

(4) the district's actions were arbitrary and capricious.

[N.J.S.A. 18A:6-17.2(a).]

If the teacher is able to prove any of the four defenses, "the arbitrator shall then determine if that fact materially affected the outcome of the evaluation[,] [and if not,] the arbitrator shall render a decision in favor of the board and the [teacher] shall be dismissed." N.J.S.A. 18A:6-17.2(b); see also Yarbrough v. State Operated School Dist., 455 N.J. Super. 136, 141-42 (App. Div. 2018) (describing the limited scope of review when arbitrating inefficiency charges).

Once rendered, "[t]he arbitrator's decision shall be final and binding . . . . The determination shall be subject to judicial review and enforcement as provided pursuant to N.J.S.[A.] 2A:24-7 through N.J.S.[A.] 2A:24-10." N.J.S.A. 18A:16-17.1(e). Those provisions provide that a reviewing court shall vacate the arbitration award in any of the following circumstances:

a.    Where the award was procured by corruption, fraud, or undue means;

b.    Where there was either evident partiality or corruption in the arbitrators, or any thereof;

c.    Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

d.    Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

[N.J.S.A. 2A:24-8.]

"Undue means," as that term is used in the statute, "ordinarily encompasses situations where the arbitrator has made a mistake of fact or law that is either apparent on the face of the record or admitted to by the arbitrator." N.J. Highway Auth. v. Int'l Fed'n of Prof'l and Tech. Eng'rs, Local 193, 274 N.J. Super. 599, 609 (App. Div. 1994). To put it another way, courts have interpreted undue means as basing an award on what amounts to "a clearly mistaken view of fact or law." Local Union 560 I.B.T. v. Eazor Express, Inc., 95 N.J. Super. 219, 227-28 (App. Div. 1967).

Ragland argues her evaluations were invalid because of procedural and substantive deficiencies by BOE in the evaluation process, specifically with

respect to the use of student growth objectives in her summative evaluations and deficiencies in her corrective action plan. She argues that BOE's departure from statutory and regulatory requirements resulted in an arbitration award obtained by undue means. BOE argues that Ragland, in effect, challenges BOE's evaluation rubric, which was approved by the DOE, and notes that such a challenge is outside the scope of the arbitrator's and trial court's review. BOE also argues that Ragland failed to overcome the significant evidence of her inefficiency submitted to the arbitrator.

While carefully reviewing the record in light of the relevant legal precedents, we identified no basis on which to reverse the trial court's order confirming the arbitrator's decision. Ragland's argument that BOE employed an evaluation rubric not approved by statute or regulations is meritless. Tenure charges may be brought based on the result of "evaluations conducted in accordance with a rubric adopted by the board and approved by the [C]ommissioner" of the DOE. N.J.S.A. 18A:6-17.3(d). The BOE applied an evaluation rubric to Ragland approved by the Commissioner through issuance of an equivalency as allowed by law.

When enacting the Teacher Effectiveness and Accountability for the Children of New Jersey Act, N.J.S.A. 18A:6-117 to -129, the Legislature found

that "[c]hanging the current evaluation system to focus on improved student outcomes, including objective measures of student growth, is critical to improving teacher effectiveness . . . ." N.J.S.A. 18A:6-118(b). The statute is intended "to raise student achievement by improving instruction through the adoption of evaluations that provide specific feedback to educators, inform the provision of aligned professional development, and inform personnel decisions . . . ." N.J.S.A. 18:6-118(a).

In pertinent part, the standards for such evaluation rubrics include, at a minimum:

> (1) four defined annual rating categories for teachers, principals, assistant principals, and vice-principals: ineffective, partially effective, effective, and highly effective;
>
> (2) a provision requiring that the rubric be partially based on multiple objective measures of student learning that use student growth from one year's measure to the next year's measure;
>
> (3) a provision that allows the district, in grades in which a standardized test is not required, to determine the methods for measuring student growth;
>
> (4) a provision that multiple measures of practice and student learning be used in conjunction with professional standards of practice using a comprehensive evaluation process in rating effectiveness with specific measures and implementation processes. Standardized assessments

shall be used as a measure of student progress but shall not be the predominant factor in the overall evaluation of a teacher; [and]

. . . .

(6)     a provision ensuring that performance measures used in the rubric are linked to student achievement . . . .

[N.J.S.A. 18A:6-123(b).]

Under N.J.A.C. 6A:10-4.2(a), the student achievement components required in the evaluations include "median student growth percentile[s]" and "[s]tudent growth objective(s), which shall be specific and measurable, based on available student learning data . . . ."  However, a district may submit an application for equivalency to gain "approval to achieve the intent of a specific rule through an alternate means that is different from, yet judged to be comparable to or as effective as, those prescribed within the rule."  N.J.A.C. 6A:5-1.2.  The Commissioner may approve an equivalency to a specific rule provided it meets the spirit and intent of an existing rule and provides measurable results.  N.J.A.C. 6A:5-1.4(a) to (b).

Normally, a teacher begins the school year with an individual professional development plan, but after a below par summative evaluation, "a corrective action plan shall be developed by the teaching staff member and the teaching

staff member's designated supervisor." N.J.A.C. 6A:10-2.5(a). In addition to the normal course of "[e]ach teacher . . . develop[ing], in consultation with his or her supervisor . . . , each student growth objective[,]" a corrective action plan must include specific goals for improvement and address areas in need of improvement from the evaluation rubric. N.J.A.C. 6A:10-4.2(e)(3); N.J.A.C. 6A:10-2.5(c); N.J.S.A. 18A:6-119.

Ragland contends that her two below par summative evaluations are invalid for failing to include the required measurable student growth objectives and also contends that her corrective action plan was deficient for failing to include same. However, N.J.S.A. 18A:6-17.2(a) unequivocally limits the arbitrator to determining whether a district substantially complied with its approved evaluation rubric, not whether the district's evaluation rubric complied with controlling statutes and regulations. Here, the arbitrator found that BOE complied with its approved evaluation rubric and that any lapses from the legal requirements were de minimis and due to Ragland's failure to cooperate, particularly with respect to providing data on her students' development.

Similarly, N.J.S.A. 2A:24-8 limits the trial court's authority to review the arbitrator's decision only for those matters listed in the statute. The validity of the district's evaluation rubric is not among the topics subject to judicial review.

The record supports the trial court's determination that Ragland established none of the statutory predicates for vacating the arbitration award.

To the extent we have not specifically addressed any of Ragland's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0430-19T1