**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2853-19

WEST ESSEX PBA LOCAL 81,

    Plaintiff-Appellant,

v.

FAIRFIELD TOWNSHIP,

    Defendant-Respondent.

_____

Argued June 1, 2021 – Decided June 22, 2021

Before Judges Rothstadt, Mayer and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000190-19.

Michael A. Bukosky argued the cause for appellant (Loccke, Correia & Bukosky, attorneys; Michael A. Bukosky, of counsel and on the briefs; Corey M. Sargeant, on the briefs).

Matthew J. Giacobbe argued the cause for respondent (Cleary Giacobbe Alfieri Jacobs, LLC, attorneys; Matthew J. Giacobbe, of counsel and on the brief).

PER CURIAM

Plaintiff West Essex PBA Local 81 (PBA) appeals from a January 2, 2020 order denying its motion to vacate a July 3, 2019 arbitration award determining defendant Township of Fairfield (Township) did not violate the parties' 2018-2020 collective negotiation agreement (CNA). The PBA alleged the Township violated Article 7 of the CNA by improperly deducting Tier IV amounts for the PBA members' health care benefits pursuant to Chapter 78, codified in N.J.S.A. 40A-10:21.1 and N.J.S.A. 52:14-17.28(c). The PBA also appeals from a March 16, 2020 order granting its motion for reconsideration but again denying the request to vacate the arbitration award. We affirm.

Before we recite the facts relevant to this appeal, we review the statutes governing public employees' contributions to the cost of their health care benefits. On June 28, 2011, the New Jersey Legislature enacted Chapter 78, requiring public employees to contribute defined percentages of their health care benefit premiums based on their annual income. N.J.S.A. 52:14-17.28(c).[1]

Chapter 78 cited two statutes relevant to this appeal, N.J.S.A. 40A:10-21.1 and N.J.S.A. 40A:10-21.2. Under N.J.S.A. 40A:10-21.1, the premium payable by public employees for health care benefits was phased in over a four-year period. N.J.S.A. 40A:10-21.1 required the minimum "amount payable by

---

[1] Chapter 78 expired four years after the date of enactment.

any employee . . . shall not under any circumstance be less than the 1.5 percent of base salary . . . ."  N.J.S.A. 40A:10-21.1(a).  Under this statute, employees paid "one-fourth of the . . . contribution" during the first year (Tier I), "one-half" in the second year (Tier II), "three-fourths" during the third year (Tier III), and the full premium rate during the fourth year (Tier IV).  Ibid.

Chapter 78 contained a "sunset" provision, providing N.J.S.A. 40A:10-21.1 "shall expire four years after the effective date."  N.J.S.A. 40A:10-21.2, governing CNAs executed after achieving the Tier IV rates, required parties to a CNA to negotiate "for health care benefits as if the full premium share was included in the prior contract."  The statute stated public employees were bound by N.J.S.A. 52:14-17.28(c) and N.J.S.A. 40A:10-21.1 "notwithstanding the expiration of those sections, until the full amount of the contribution . . . ha[d] been implemented . . . ."  N.J.S.A. 40A:10-21.2.

Against this statutory background, we summarize the facts relevant to this appeal.  The facts are based on a written opinion and arbitration award rendered after the March 20, 2019 arbitration hearing.

The PBA and the Township were parties to a series of CNAs beginning on January 1, 2009.  The first CNA governed 2009 through 2011.

Under the next CNA, governing 2012 through 2014, the PBA members contributed to their health care benefits in accordance with Chapter 78. The PBA members began paying Tier IV rates as of January 1, 2015. Article 7 of the 2012-2014 CNA addressed employee health benefits and provided:

> The Employer shall provide to members and their families the following insurance protection to the members:
>
> 1. The Horizon Blue Cross/Blue Shield Direct Access 8, or equivalent, at no cost to the members of the PBA Local #81.

The third CNA, governing 2015 through 2017, modified employee health benefit contributions. As revised, Article 7 provided:

> The Employer shall provide to members and their families the following insurance protection to the members: Additionally, all members shall contribute to health benefits pursuant to State Law.
>
> 1. The Horizon Blue Cross/Blue Shield Direct Access 8, or equivalent, at no cost to the members of the PBA Local #81.

After the expiration of the 2015-2017 CNA, the PBA and the Township began negotiations for a new CNA. The parties met three times to discuss a new agreement. According to the PBA, it sought to renegotiate health care benefit contributions for its members as part of a new CNA.

4 <span>A-2853-19</span>

The PBA submitted a proposal seeking "a modification of the Chapter 78 co-payments provisions applicable to members." The PBA sought to reduce its members' health care benefit contributions to the minimum 1.5 percent of salary under N.J.S.A. 40A:10-21.1. The Township rejected the PBA's proposal, and the PBA failed to submit another proposal or further discuss the issue. The Township never agreed to a modification of the health care benefit contributions for the PBA members.

On December 18, 2017, the parties signed a memorandum of agreement (MOA). The MOA revised Articles 3, 6, and 21 of the 2015-2017 CNA and provided, "All proposals which are not included in this Memorandum of Agreement shall be deemed withdrawn by both parties."

On February 13, 2018, the parties executed the 2018-2020 CNA. In the 2018-2020 CNA, Article 7 remained unchanged from the prior CNA and required the PBA members to "contribute to health benefits pursuant to State Law."

About a month after signing the 2018-2020 CNA, some of the PBA members objected to the amount withheld from their paycheck for health care benefits. The PBA took the position Article 7 of the 2018-2020 CNA required its members pay only the minimum required by law, 1.5 percent of their base

salary. The Township claimed Article 7 of the CNA required the PBA members to pay the Tier IV rates, the same as the prior CNA.

On March 9, 2018, the PBA filed a grievance with the Public Employment Relations Commission (PERC) seeking to arbitrate the amount to be paid by its members for health care benefits. PERC appointed an arbitrator (Arbitrator). (Arbitrator). The Arbitrator conducted a hearing on March 20, 2019, at which time the parties presented witnesses and submitted evidence.

Ralph Casendino testified on behalf of the PBA. He served as a negotiator for the 2018-2020 CNA. According to Casendino, the PBA sought to decrease health care premiums for its members to 1.5 percent of their salary. He noted the Township did not include language in the proposed CNA continuing the payment of contributions at the Tier IV rate. Casendino explained the PBA would have never agreed to language requiring its members pay the full Tier IV rates in the new CNA.

On cross-examination, Casendino acknowledged the language in the 2018-2020 CNA governing the payment of health care benefit contributions remained unchanged from the prior CNA. He also conceded the 2018-2020 CNA did not explicitly provide for contributions to be limited to 1.5 percent of salary. Additionally, he admitted reviewing and signing the MOA.

A-2853-19

Joe Catenaro, the Township's administrator, testified at the arbitration hearing. He negotiated the 2018-2020 CNA, along with the Township's mayor and a Township council representative. Catenaro explained the Township "emphatically" rejected the PBA's request to reduce health care benefit premiums because it would have been "extremely costly." According to Catenaro, the PBA's proposed modification to 1.5 percent of salary "was so flatly and resoundingly rejected[,] that was the end of it." Absent any revision to the health care benefit contribution provision in the new CNA, the Township deemed the Tier IV rates remained in effect.

On July 3, 2019, the Arbitrator issued a written opinion. She determined the issue was whether the Township violated the 2018-2020 CNA by deducting Tier IV contribution rates from the PBA members' salaries for health care benefits.

The Arbitrator found the evidence showed "the Township rejected the PBA's proposals and the PBA d[id] not refute this." She also determined the PBA abandoned its proposal to reduce the health care benefit contributions because the MOA expressly withdrew proposals not memorialized in the MOA. According to the Arbitrator, "after completing the phase-in of Chapter 78, the parties completed their successor agreement negotiations without having

reached an agreement to reduce employee contributions to 1.5 percent of base salary." As a result, she found "the phrase in the[] 2018-2020 [CNA], 'pursuant to State law' to refer to Chapter 78 and that the[] existing health care contributions remain[ed] at Tier IV." Applying N.J.S.A. 40A:10-21.1, the Arbitrator held "[a]ccording to State law, Tier IV . . . became the existing term or condition leading to the next contract negotiations."

The Arbitrator rejected the PBA's claim that because the Township expressly required other public employees groups within the municipality to contribute to health care benefits at the Tier IV rate in executing new agreements with those units, the Township did not intend to impose the Tier IV rate for the PBA members. She found the Township's inclusion of Tier IV contribution rates in agreements with other collective bargaining units was consistent with the Township's position during the negotiation of the 2018-2020 CNA with the PBA.

She further determined the PBA's argument, justifying contribution payments of 1.5 percent of base salary because Chapter 78 expired and its members satisfied all four payment Tiers, lacked merit. The Arbitrator held "Chapter 78 and N.J.S.A. 40A:10-21.2 make clear, the Tier IV rate [did] not disappear but must be negotiated – to agreement" and "[a]bsent an agreement,

8

Tier IV remain[ed] the health benefits contribution, not merely by operation of collective negotiations processes and principles but also by statute."

The Arbitrator concluded the PBA members were "required to contribute to their health care benefits costs pursuant to Chapter 78, which are the Tier IV rates. The Township did not agree to change the rate." Thus, the Arbitrator denied the PBA's grievance, finding "the Township did not violate Article 7 of the [2018-2020] CNA by continuing to deduct the Tier IV amounts from PBA members in January 2018."

On September 26, 2019, the PBA filed an Order to Show Cause and verified complaint in the Chancery Division of the Superior Court seeking to vacate the Arbitrator's award. The judge heard counsels' arguments on November 13, 2019. In a January 2, 2020 order, the judge denied the PBA's motion to vacate the arbitration award, concluding the PBA failed to satisfy any of the prongs necessary to vacate an arbitration award under N.J.S.A. 2A:24-8.[2]

The judge found the Arbitrator's award was not a product of "undue means" under N.J.S.A. 2A:24-8(a). The judge held the Arbitrator was tasked with determining the meaning of "State Law" and properly concluded the Tier

---

[2] While the PBA argued the Arbitrator's award should be vacated under all four subsections of N.J.S.A. 2A:24-8, the judge found not "even a scintilla of evidence that the [A]rbitrator violated sections (b) or (c)."

IV rates were the "status quo." The judge cited our decision in <u>Ridgefield Park Board of Education v. Ridgefield Park Education Association</u>, 459 N.J. Super. 57 (App. Div. 2019),[3] explaining "Chapter 78 unambiguously addressed the negotiation of collective bargaining agreements to be executed after employees reached full implementation of the four-tier premium share, setting forth that the full premium share must be considered the <u>status quo</u> in such negotiations." Further, while recognizing Chapter 78 contained a sunset provision and expired on June 28, 2015, the judge concluded "the statutory language specifically provided that the contribution levels would survive as included in the prior contract and be subject to further negotiation for the next contract." He held "the PBA unsuccessfully attempted to negotiate different co-payment obligations" under the 2018-2020 CNA, and the Township never "agreed to a reduction in the co-payment."

Further, the judge found the PBA failed to demonstrate the Arbitrator exceeded or imperfectly executed her powers to set aside the award under N.J.S.A. 2A:24-8(d). The judge explained "the [A]rbitrator was tasked with

---

[3] After the judge issued his decision, our Supreme Court granted the petition for certification in <u>In re Ridgefield Park Board of Education v. Ridgefield Park Education Association</u>, 239 N.J. 393 (2019). On August 17, 2020, during the pendency of this appeal, the Court reversed our decision. <u>See</u> <u>In re Ridgefield Park Bd. of Educ.</u>, 244 N.J. 1 (2020).

determining whether the parties' agreement that 'all members shall contribute to health benefits pursuant to State Law' meant the tiered obligation or the 1.5 [percent] obligation." In reviewing the Arbitrator's decision, the judge determined "[t]he [A]rbitrator did not go beyond the confined authority bestowed by the parties[,]" "did not address disputes beyond the agreement[,]" and "did not act with unbridled discretion in applying the governing law . . . ." He concluded the Arbitrator "acknowledged [her] limitations" regarding alteration of the 2018-2020 CNA and "examined the relevant statutes, case law[,] and employed contract interpretation tools in deciphering the parties' agreement and intent." The judge held the Arbitrator's interpretation of the 2018-2020 CNA was "reasonably debatable," and affirmed the arbitration award.

The PBA filed a motion for reconsideration, alleging the judge erred in affirming the Arbitrator's award. In a March 16, 2020 order and written decision, the judge again denied the PBA's motion to vacate the arbitration award, concluding:

> The parties negotiated; the PBA proposed a modification of the Chapter 78 Tier-Four amount; the Township rejected the proposal; the PBA withdrew the proposed modification; executed the MOA . . . ; and [the PBA] executed the new CNA with no change to the historic co-payment obligation contractual language.

On appeal, the PBA argues the judge erred in denying its motion to vacate the arbitration award. We disagree.

We "review a trial court's decision on a motion to vacate an arbitration award de novo." Yarborough v. State Operated Sch. Dist. of City of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018) (citing Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013)). However, "[j]udicial review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). "The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Group, 220 N.J. 544, 556 (2015) (citing Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris, 100 N.J. 383, 390 (1985)). "[T]o ensure finality, as well as to secure arbitration's speedy and inexpensive nature, there exists a strong preference for judicial confirmation of arbitration awards." Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013) (alteration in original) (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007)).

We apply "an extremely deferential review when a party to a collective bargaining agreement has sought to vacate an arbitrator's award." Policemen's

Benevolent Ass'n, Local No. 11 v. City of Trenton, 205 N.J. 422, 428 (2011). "In the public sector, an arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'" Linden Bd. of Educ., 202 N.J. at 276-77 (quoting Middletown Twp. PBA Local 124, 193 N.J. at 11). An award is "reasonably debatable" if it is "justifiable" or "fully supportable in the record." Policemen's Benevolent Ass'n, 205 N.J. at 431 (quoting Kearny PBA Local No. 21 v. Town of Kearny, 81 N.J. 208, 223-24 (1979)).

N.J.S.A. 2A:24-8 sets forth the grounds for vacating an arbitration award. Pertinent to this appeal, a court may vacate an arbitration award "[w]here the award was procured by corruption, fraud or undue means" or "[w]here the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made." N.J.S.A. 2A:24-8(a) and (d).

"'[U]ndue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record . . . ." Borough of E. Rutherford, 213 N.J. at 203 (alteration in original) (quoting State Off. of Emp. Rels. v. Commc'ns Workers of Am., AFL-CIO, 154 N.J. 98, 111 (1998)).

An arbitrator exceeds her authority where she ignores "the clear and unambiguous language of the agreement . . . ."  City Ass'n of Supervisors & Adm'rs v. State Operated Sch. Dist. of City of Newark, 311 N.J. Super. 300, 312 (App. Div. 1998).  It is fundamental, "an arbitrator may not disregard the terms of the parties' agreement, nor may he [or she] rewrite the contract for the parties."  Cnty. Coll. of Morris, 100 N.J. at 391 (citation omitted).  Moreover, "the arbitrator may not contradict the express language of the contract . . . ."  Linden Bd. of Educ., 202 N.J. at 276.

The parties disputed whether the PBA members were required to contribute 1.5 percent of their base salary or the Tier IV rates toward health care benefits under the 2018-20120 CNA.  Nothing in the language of the CNA suggests the PBA members altered the health care benefit contribution amounts from the prior CNA.  In fact, while the PBA sought to reduce its members' contribution for health care benefits after full implementation of the Tier IV rates, the Township never agreed to any such reduction.

N.J.S.A. 40A:10-21.2 addresses health care contributions after full implementation of Tier IV contribution rates.  The statute provides:

> A public employer and employees who are in negotiations for the next collective negotiation agreement to be executed after the employees in that unit have reached full implementation of the premium

14

share set forth in section 39 of P.L.2011, c. 78 (C.52:14-17.28c) shall conduct negotiations concerning contributions for health care benefits <u>as if the full premium share was included in the prior contract</u>. The public employers and public employees shall remain bound by the provisions of sections 39, 42, and 44 of P.L. 2011, c. 78 . . . notwithstanding the expiration of those sections, until the full amount of the contribution required by section 39 has been implemented . . . .

. . . .

After full implementation, those contribution levels <u>shall become part of the parties' collective negotiations and shall then be subject to collective negotiations</u> in a manner similar to other negotiable items between the parties.

[N.J.S.A. 40A:10-21.2 (emphasis added).]

The statute unambiguously provides where Tier IV contributions were included in the parties' prior CNA, the Tier IV rate formed the starting point for the negotiation of a new CNA. Consequently, the Tier IV rate was the "status quo" for negotiating health care benefit contributions in the subsequent CNA. In accordance with the unequivocal language in N.J.S.A. 40A:10-21.2, the status quo, meaning the Tier IV rates, applied for calculating the health care benefit contributions withheld from the PBA members' paychecks.

During the pendency of the PBA's appeal, our Supreme Court issued its decision in <u>In re Ridgefield Park Board of Education</u>, 244 N.J. 1 (2020). The

Supreme Court's decision in that case supports the Arbitrator's award and the Chancery judge's denial of the PBA's motion to vacate that award.

The CNA at issue in <u>Ridgefield</u> required the employees pay "1.5 [percent] or the minimum set forth by statute, regulation or code." 244 N.J. at 9. In that case, the employees argued because the Tier IV rates were achieved in the first year of the CNA, they were only obligated to pay the 1.5 percent minimum rate, notwithstanding there were several years remaining on the existing CNA. <u>Id.</u> at 9-10. The employer argued the employees were required to pay the full Tier IV rates for the remainder of the CNA's term and any reduction could only be negotiated in a subsequent agreement. <u>Id.</u> at 10.

In analyzing the statute, the Court wrote, "The Legislature . . . made the achieved Tier 4 contribution level the status quo for purposes of negotiating contributions for the successor contract." <u>Id.</u> at 20. Relying on the legislative history of Chapter 78, the Court held:

> The gubernatorial and legislative initiatives that led to Chapter 78 and the legislative history of the statute itself thus confirm the Legislature's intent. The Legislature clearly viewed the increasing costs of employee health care to be among the State's most serious fiscal challenges, destined to worsen absent significant reform. The Legislature did not enact Chapter 78 to achieve only a transient increase in employees' health insurance premium contributions, followed by an immediate reversion to pre-statute

16

contribution rates as soon as employees had contributed at the Tier 4 level for a year. Instead, it envisioned that Chapter 78 would increase employee health insurance premium contributions over the long term.

[Id. at 23.]

The Court agreed with the employer that "once achieved, Tier 4 contribution levels are to remain in effect unless and until the parties negotiate lower health insurance premium contribution rates in the next CNA." Id. at 20-23.

Based on the New Jersey Supreme Court's decision in In re Ridgefield Park Board of Education, we are satisfied the full Tier IV rates were the status quo for the successor 2018-2020 CNA because the Tier IV rates were included in the prior 2015-2017 CNA. To reduce the PBA members' contribution rate for health care benefits, the PBA was required to negotiate such a change. Because no modification was agreed upon or implemented, the Tier IV rates remained in effect for the 2018-2020 CNA.

Based on the foregoing analysis, we discern no basis to disturb the Chancery court's decision affirming the Arbitrator's award.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2853-19