**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4435-19

CITY OF PLAINFIELD,

    Plaintiff-Appellant,

v.

PBA LOCAL 19, PBA/SOA,

    Defendants-Respondents.

_____

Argued October 28, 2021 – Decided January 18, 2022

Before Judges Alvarez and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1820-20.

Littie E. Rau argued the cause for appellant (Ruderman & Roth, LLC, attorneys; Mark S. Ruderman, of counsel; Littie E. Rau, of counsel and on the briefs).

Leonard C. Schiro argued the cause for respondent (Mets Schiro & McGovern, attorneys; Leonard C. Schiro, of counsel and on the brief; Nicholas P. Milewski, on the brief).

PER CURIAM

The City of Plainfield appeals from two orders: a July 27, 2020 denial of the City's order to show cause seeking to set aside an arbitration award, and the August 10, 2020 confirmation of the award. The Policemen's Benevolent Association Local 19 (PBA) and PBA Local 19 Superior Officers Association (SOA) (collectively, the Union) filed unsuccessful grievances they took to arbitration regarding the City's 2018-2021 collective negotiation agreement (CNA) obligation to pay the health care expenses of certain retirees, their spouses, and dependents. The Union prevailed on behalf of retirees hired before May 21, 2010. We now affirm.

The April 29, 2020 arbitration award also found that those retirees hired after May 21, 2010, must contribute to their health benefits as required by the relevant statute—a finding the Union does not challenge. The portion of the arbitrator's decision challenged by the City, and the judge's confirmation, were based in part on the fact that City counsel and the Union negotiated the item. To establish the existence of negotiations, the Union relied upon a November 8, 2017 letter from City counsel to the Union attorney, to the effect that after their phone call, City counsel had deleted language in the CNA about the applicability of the statutes now in dispute. We reproduce the relevant portions of the letter:

ARTICLE XI – INSURANCE PROTECTION

11.1 ~~The provisions of this article are subject to Chapter 78, Public Laws of 2011.~~

Please arrange for Union signature today so I can present to the Mayor and Council tonight.

The arbitrator found the letter corroborated the negotiations between counsel that resulted in the final version of the CNA adopted by the City.

The City contends the letter does not mean what it purports to say, and that if it does, the agreement is barred by operation of law. The Legislature enacted "Chapter 78" on June 28, 2011. See L. 2011, c.78. The law required public employees to contribute defined percentages of their health care benefit premiums based on annual income. N.J.S.A. 52:14-17.28(c).

Included in Chapter 78 is N.J.S.A. 40A:10-21.1, which phased in the health benefit premium costs payable by public employees in four tiers over the course of four years. N.J.S.A. 40A:10-21.1(a) also stated the minimum "amount payable by any employee under this subsection shall not under any circumstance be less than the 1.5 percent of [the employee's] base salary . . . ." The statute required employees pay "one-fourth of the . . . contribution" during the first year (tier one), "one-half" in the second year (tier two), and "three-fourths" during the third year (tier three). N.J.S.A. 40A:10-21.1(a). Tier four, the full premium

A-4435-19

rate, is reached by the fourth year. Ibid. Retirees with twenty years or more of creditable service as of June 28, 2011 were exempted from payment. N.J.S.A. 40A:10-21.1(b)(3).

Chapter 78's "sunset" provision requires N.J.S.A. 40A:10-21.1 to "expire four years after the effective date," on June 28, 2015. In turn, N.J.S.A. 40A:10-21.2, also included in Chapter 78, governs CNAs executed after reaching the tier four rates under 40A:10-21.1. It provides parties to a CNA "shall . . . negotiat[e] . . . for health care benefits as if the full premium share was included in the prior contract." N.J.S.A. 40A:10-21.2. Additionally, the section binds public employees to N.J.S.A. 52:14-17.28(c) and N.J.S.A. 40A:10-21.1 "notwithstanding the expiration of those sections, until the full amount . . . has been implemented in accordance with . . . section 42." Ibid.

Based on the CNA cycle, and the implementation of Chapter 78, non-exempt retirees of the Union began making contributions in 2012 at a tier one level. N.J.S.A. 40A:10-21.1(a). Subsequently, 2013 contributions were at a tier two level, 2014 contributions at tier three, and finally, full implementation occurred in 2015 at a tier four level. N.J.S.A. 40A:10-21.1(a). Accordingly, based on the terms of N.J.S.A. 40A:10-21.2, once the 2014-2017 CNA expired,

the contribution rate became a negotiable term. If not negotiated, the contributions would remain at a tier four level.

The 2018-2021 CNA stated under Article 11-7 "[t]he City agrees at its sole expense to continue health insurance coverage for employee[s], spouse and dependents for those [Police/]Superior Officers who retire as such retirement is defined by P.F.R.S. Said health insurance coverage shall be the same coverage provided to City employees." Similar language had been included in prior CNAs for years.

In May 2017, a number of officers who had accrued less than twenty years of service with the City prior to June 28, 2011 began to retire. Among the retirees were the nine named Union members who are plaintiffs in this lawsuit. Despite having twenty-five or more years of service at retirement, none had twenty years as of June 28, 2011. Thus, they fell into the category of "non-exempt retirees," because exempt retirees had twenty years or more of service as of June 28, 2011, the effective date of Chapter 78.

The conflict arose when the City notified all non-exempt retirees, including those hired before May 21, 2010, like the nine named plaintiffs, of its intention to collect health insurance premiums from retirement pay. The arbitrator's award upheld the Union's grievance, and imposed the obligation

5

upon the City as expressed in the 2018-2021 CNA. The City's verified complaint and order to show cause followed, as did the Union's answer, and the counterclaim seeking confirmation of the award.

The trial judge, while acknowledging another arbitration between the City and the Plainfield Fire Officers Association (PFOA), had a different outcome, considered the facts in this case "diametrically opposed." In the other arbitration, the arbitrator did not find that the item was negotiated.

The City asserts that the statutory scheme prohibits payment of non-exempt retirees' health care costs. It also suggests we must apply a different standard of review because this negotiation was between a public entity and a union. We disagree with both propositions.

Generally, "[j]udicial review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). "The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015) (citing Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris, 100 N.J. 383, 390 (1985)). "[T]o ensure finality, as well as to secure arbitration's speedy and inexpensive nature, there exists a strong preference for

6

judicial confirmation of arbitration awards." Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013) (alteration in original) (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007)).

A trial court's decision to confirm an arbitration award is a conclusion of law, which we review de novo. Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013). Similarly, we "review the trial court's decision on a motion to vacate an arbitration award de novo." Yarborough v. State Operated Sch. Dist. of City of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018) (citing Minkowitz, 433 N.J. Super. at 136). This court is bound to accept the trial court's factual findings unless "clearly erroneous." Del Piano v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 372 N.J. Super. 503, 507 (App. Div. 2004), (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48 (1995)).

Finally, in the public sector, "an arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'" Policemen's Benevolent Ass'n v. City of Trenton, 205 N.J. 422, 428-29 (2011) (quoting Linden Bd. of Educ., 202 N.J. at 276-77). An award is "reasonably debatable" if it is "justifiable" or "fully supportable in the record." Id. at 431 (citing Kearny PBA Local No. 21 v. Town of Kearny, 81 N.J. 208, 223-24 (1979)). "Under the 'reasonably debatable'

7

standard, a court reviewing [a public-sector] arbitration award 'may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position.'" Borough of E. Rutherford, 213 N.J. at 201-02 (alteration in original) (quoting Middletown Twp. PBA Local 124, 193 N.J. at 11). "If the correctness of the award, including its resolution of the public-policy question, is reasonably debatable, judicial intervention is unwarranted." Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 443 (1996).

We do not dispute the City's point that a public sector arbitration decision may be vacated if contrary to existing law or public policy, or if it implicates a clear mandate of public policy. Middletown Twp. PBA Local 124, 193 N.J. at 11 (quoting N.J. Tpk. Auth. v. Local 196, I.F.P.T.E., 190 N.J. 283, 294 (2007)). But the relevant CNA provision, and the effect upon the specified non-exempt retirees, is neither unlawful nor contrary to a clear mandate of public policy.

Chapter 78 did not create a minimum of 1.5 percent contribution level for those hired prior to May 21, 2010. That floor applies only to those retirees hired after May 21, 2010, who are required to make a 1.5 percent contribution.

Chapter 78 established a staggered timeline to phase-in employee health care contributions. By its very terms, once the fourth tier or "full premium"

contribution level was reached, the future contribution level became a negotiable component of subsequent CNAs. N.J.S.A. 40A:10-21.2. In this case, tier four was reached in 2015. At that time, the forthcoming 2018-2021 CNA would be the first in which the parties could negotiate downwards from the then-status quo tier four contribution level. N.J.S.A. 40A:10-21.2.

The statute specifies that although some sections would outlive the four-year expiration, those surviving sections would only remain "alive" until the tier four contribution level was reached:

> A public employer and employees who are in negotiations for the next [CNA] to be executed after the employees in that unit have reached full implementation of the premium share set forth in section 39 of P.L. 2011, c. 78 [N.J.S.A. 52:14-17.28c] shall conduct negotiations concerning contributions for health care benefits as if the full premium share was included in the prior contract. The public employers and public employees shall remain bound by the provisions of sections 39, 42, and 44 of P.L. 2011, c. 78 [N.J.S.A. 52:14-17.28c, 40A:10-21.1, and 40A:5A-11.1], notwithstanding the expiration of those sections, until the full amount of the contribution required by section 39 has been implemented in accordance with the schedule set forth in section 42.
>
> [N.J.S.A. 40A:10-21.2 (emphasis added).]

The contribution level was a fully negotiable term of the CNA after the expiration of the 2014-2017 CNA in which full implementation had occurred, and hence, confirmation of the award was proper.

N.J.S.A. 40A:10-21.1(b)(3) does not establish a 1.5 percent floor when read in conjunction with N.J.S.A. 40A:10-23(b), which also imposes a minimum 1.5 percent contribution rate for employees hired after May 21, 2010. The harmonization section was intended to ensure that retirees were not charged both 1.5 percent under N.J.S.A. 40A:10-23(b) and a second 1.5 percent under Chapter 78. The statute says:

> The amount payable by a retiree under this subsection shall not under any circumstance be less than the 1.5 percent of the monthly retirement allowance, including any future cost of living adjustments thereto, that is provided for such a retiree, if applicable to that retiree, under subsection b. of N.J.S.[A.] 40A:10-23. A retiree who pays the contribution required under this subsection shall not also be required to pay the contribution of 1.5 percent of the monthly retirement allowance under subsection b. of N.J.S.[A.] 40A:10-23.
>
> [N.J.S.A. 40A:10-21.1(b)(3) (emphasis added).]

Thus, a retiree's contribution under Chapter 78 cannot be less than 1.5 percent if the retiree is already obligated to make a minimum 1.5 percent contribution under N.J.S.A. 40A:10-23(b) (i.e. they were hired after May 10, 2010).

Further, N.J.S.A. 40A:10-21.1 was explicitly subject to the sunset provision of Chapter 78 and was thus not applicable after full implementation. A 1.5 percent floor does not exist for all except those who accumulated twenty years of service as of June 28, 2011. It does not exist for the nine named plaintiffs who had twenty-five or more years at retirement, were hired before May 21, 2010, but did not have twenty years of service as of June 28, 2011. Because the 1.5 percent floor as alleged by the City does not exist as to these grievants, the award is not predicated on a mistake of law.

Nor does our reading of the statute establish it is contrary to public policy or counter to the legislative history and intent of Chapter 78 in aiding local governments in reducing the line item for employees' health benefit premiums. It created a category of employees for whom the parties could negotiate the contribution rate, therefore making the award reasonably debatable and in accord with public policy.

We disregard the arbitration award made between the City and the PFOA, which the City paints as precedential. That distinguishable award did not bind the trial court and does not bind us. There, the PFOA submitted a proposal regarding lowering contribution rates which was never accepted by the City. The intent during negotiations was for contribution rates to remain at tier four

full implementation. The carryover language in the CNA stating health premiums for non-exempt retirees would be at the sole expense of the City could not be binding because the term was not negotiated, unlike the term at issue here. This fundamental difference makes that case inapplicable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4435-19