**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3995-19

SHARONDA ALLEN,

 Plaintiff-Appellant,

v.

EAST ORANGE BOARD OF
EDUCATION, ESSEX
COUNTY,

 Defendant-Respondent.
_____

Argued November 30, 2021 – Decided February 4, 2022

Before Judges Currier, DeAlmeida, and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000052-20.

William P. Hannan argued the cause for appellant (Oxfeld Cohen, PC, attorneys; William P. Hannan, of counsel and on the briefs).

George G. Frino argued the cause for respondent (DeCotiis, Fitzpatrick, Cole & Giblin, LLP, attorneys; George G. Frino, of counsel; Paul J. Miller and Ashanti M. Bess, on the brief).

PER CURIAM

After an arbitration, plaintiff Sharonda Allen was dismissed from her position as a tenured public-school teacher for the East Orange Board of Education. Plaintiff filed suit, seeking to vacate the arbitration result. The trial court dismissed her complaint, and plaintiff now appeals. On appeal, she contends that: the Board should have been barred by the arbitrator from introducing evidence at the hearing because the Board failed to comply with N.J.S.A. 18A:6-17.1(b)(3); the Board presented no credible evidence at the hearing which could support the tenure charges; plaintiff's termination violated the doctrines of progressive discipline and mitigation of penalty; and plaintiff was afforded insufficient notice of the tenure charges. We reject her arguments and affirm for the following reasons.

I.

In 2003, plaintiff was hired by the Board as a public-school teacher. The Board continued her employment as a non-tenured teacher for the 2003-2004, 2004-2005, and 2005-2006 school years. She subsequently acquired tenure status with the Board in 2006. In 2011, the Board assigned her to teach at the East Orange Campus High School (EOCHS) in East Orange. During her sixteen years with the Board, her reviews were mixed. The Board consistently rated

plaintiff's skill and competence as a teacher as "effective" in her annual performance reviews. However, the record shows that she received multiple written warnings regarding violations of various teaching and administrative policies. On at least one occasion prior to the incident for which she was terminated, the Board withheld plaintiff's annual salary increment and placed her on probation for using "inappropriate language, interfering in the instruction of students and disrupting the learning process."

On December 5, 2018, S.B., a ninth-grade student, failed to follow plaintiff's directives during a school assembly. He became confrontational when she approached him about his inappropriate behavior. A verbal altercation between S.B. and plaintiff ensued. During this altercation, numerous students, teachers, and staff heard plaintiff utter the following to S.B.: "[s]hut up," "[s]hut the fuck up," "I will get you jumped," "[y]ou don't know me," "I will get one of these big niggas to jump you," and "[w]atch your back at [c]ampus." In response to S.B.'s mother's complaints about the incident, the Board hired an independent investigator to conduct an inquiry.

After the incident, Dr. Kevin West, the Board superintendent, scheduled a meeting among plaintiff, S.B., and S.B.'s mother to address the family's concerns regarding the child's safety at school. S.B. apologized to plaintiff for

telling her to "get out of his face," but plaintiff did not apologize to S.B. for her conduct.

On February 1, 2019, after the meeting between plaintiff, S.B., and S.B.'s mother, Dr. West convened a meeting with Dr. Ronald Estrict, the EOCHS principal, Dr. Deborah Harvest, the Board assistant superintendent, and plaintiff. At the meeting, Dr. West suspended plaintiff with pay for two weeks, effective February 4, 2019. In addition, Dr. West informed her that she was being transferred to a different school at the conclusion of her suspension. Dr. West stated to plaintiff that the transfer was a precaution in response to student safety concerns, as the incident involved a teacher threatening physical violence against a high school student. The suspension notice stated: "[y]our behavior demonstrated a total disregard and disrespect for the position [of] teacher, [for] the student that you made inappropriate comments to, and [for] the [Board]."

At the meeting, plaintiff contested the transfer. She told Dr. West, "[y]ou don't know my reach. The mayor will not support this . . . . I am sure that parents will contact you and students will protest . . . . Be prepared for the amount of people at the Board meeting."

After the meeting, Dr. West handed plaintiff a list of Board policies she had violated, including written policies concerning: inappropriate staff conduct;

4

healthy workplace environment; use of electronic communication; and civility. He directed plaintiff to keep the matter confidential and not to disclose S.B.'s name to anyone.

A few days after the meeting, plaintiff helped organize a school-wide student walk-out in protest of her suspension and transfer. She communicated with students and parents, encouraging them to protest on her behalf. She asked them to call the mayor and demand her immediate return to EOCHS. Plaintiff also disclosed S.B.'s name in a social media exchange with another student. The following exchange was posted on Facebook Messenger[1]:

> Plaintiff: [A student] said that the boy told her that he lied about the incident just to get me in trouble.
>
> Student: Who's the boy and we're gonna [sic] report this.
>
> Plaintiff: [S.B.]
>
> Student: Bet!!

Plaintiff admits to disclosing S.B.'s name to the student.

As a result of the post, S.B. was confronted by schoolmates about the December 5 incident. S.B.'s mother, fearing for her child's safety, enrolled S.B.

---

[1] Facebook Messenger is a mobile messaging application and platform used for instant messaging, sharing photos, videos, and audio recordings.

A-3995-19

at another high school. Dr. West next recommended that tenure charges be brought against plaintiff. Dr. West testified that he decided to file tenure charges against plaintiff because: the social media post identified S.B. as the student who caused her suspension and transfer; the confrontations and threats S.B. endured due to the social media post; and the recommendations in the Board's investigative report. He also noted that plaintiff's communications with students and parents on social media were a violation of the Board's social media policy. Dr. West further testified that all school policies were available on the Board's website for all staff members. Plaintiff testified that she was keenly aware of the policies.

On or about June 11, 2019, Dr. West submitted tenure charges and a statement of evidence against plaintiff to the Board.[2] Approximately a month later, the Commissioner of Education assigned an arbitrator for the tenure hearing. On July 29, plaintiff moved to dismiss the charges, arguing that the

---

[2] The tenure charges included: writing an email that rises to a level of insubordination warranting removal; conduct unbecoming; inciting student misconduct in the form of cutting class for a school-wide protest; using social media to inappropriately communicate with students; and jeopardizing the safety of S.B. by way of releasing his name to another student with the intent to have him harassed, intimidated, bullied, or as retaliation for her suspension.

6

Board failed to provide discovery pursuant to N.J.S.A. 18A:6-17.1(b)(3). The next day, the Board produced the relevant discovery.

On August 22, 2019, the arbitrator heard plaintiff's motion to dismiss and denied it. Following a two-day hearing, the arbitrator rendered an award and issued an opinion on December 28, 2019 sustaining the tenure charges against plaintiff and terminating her employment with the Board.[3] Plaintiff filed a verified complaint and order to show cause seeking to vacate the arbitration award on March 13, 2020. On May 29, 2020, the judge made findings, granted the Board's motion to confirm the arbitrator's award, and dismissed plaintiff's complaint.

Plaintiff raises the following points on appeal:

  I.   THE ARBITRATOR'S AWARD AND OPINION MUST BE VACATED BECAUSE HE VIOLATED N.J.S.A. 18A:6-17.1[(b)](3) BY FAILING TO PRECLUDE THE RESPONDENT FROM INTRODUCING WITNESSES AND EVIDENCE BARRED BY STATUTE.

 II.   THE ARBITRATOR'S AWARD AND OPINION IS NOT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD AND MUST BE VACATED.

        A. THE ARBITRATOR'S DECISION SUSTAINING COUNT [EIGHT] OF THE TENURE CHARGES IS NOT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD.

---

[3] The Board filed eight tenure charges against plaintiff, the arbitrator dismissed seven charges as "unsubstantiated."

7

B. THERE IS NO SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD TO SUPPORT THE ARBITRATOR'S DETERMINATION OF TERMINATION AS THE APPROPRIATE PENALTY.

III.  THE ARBITRATOR IMPROPERLY FOUND APPELLANT GUILTY OF CONDUCT THAT SHE WAS NOT CHARGED WITH IN THE TENURE CHARGE.

II.

In reviewing the award confirmation, we owe no special deference to the trial court's interpretation of the law and the legal consequences that flow from the established facts. Yarborough v. State Operated Sch. Dist. of City of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Therefore, we review the trial court's decision on a motion to vacate an arbitration award de novo. Ibid. (citing Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013)). However, we give deference to a trial court's factual findings if they are supported by substantial, credible evidence in the record. Lee v. Brown, 232 N.J. 114, 126-27 (2018); Zaman v. Felton, 219 N.J. 199, 215 (2014).

On the other hand, "[j]udicial review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). In the public sector, an "arbitrator's award will be confirmed

'so long as the award is reasonably debatable.'" Linden Bd. of Educ., 202 N.J. at 276 (quoting Middletown Twp. PBA Loc. 124 v. Twp. of Middletown, 193 N.J. 1, 11 (2007)).  In pertinent part, N.J.S.A. 2A:24-8 sets forth the limited statutory grounds on which we may vacate an arbitration award:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

"'[U]ndue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record . . . ." Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 203 (2013) (alteration in original) (quoting Off. of Emp. Rels. v. Commc'ns Workers of Am., AFL-CIO, 154 N.J. 98, 111 (1998)).  "[A]n arbitrator's failure to follow the substantive law may . . . constitute 'undue means' which would require the award to be vacated."  In

re City of Camden, 429 N.J. Super. 309, 332 (App. Div. 2013) (quoting Jersey City Educ. Ass'n v. Bd. of Educ. of Jersey City, 218 N.J. Super. 177, 188 (App. Div. 1987)). An arbitrator exceeds their authority where they ignore "the clear and unambiguous language of the [statute] . . . ." City Ass'n of Supervisors & Adm'rs v. State Operated Sch. Dist. of City of Newark, 311 N.J. Super. 300, 312 (App. Div. 1998). An arbitrator is prohibited from contradicting the express language of the statute. Linden Bd. of Educ., 202 N.J. at 276.

III.

Plaintiff first argues that the arbitrator should have barred the Board from introducing evidence because the Board failed to comply with N.J.S.A. 18A:6-17.1(b)(3). She further argues that (1) the statutory language in N.J.S.A. 18A:6-17.1(b)(3) is clear, plain, and unambiguous, thus the arbitrator's failure to preclude the Board's witnesses from testifying is contrary to the plain meaning of the statute; (2) the arbitrator's violation of the statute was highly prejudicial to her; and (3) the arbitrator exceeded his authority by ignoring and violating the statute. She also contends the Board's failure to supply discovery immediately upon referral of the case to arbitration warrants vacation of the arbitrator's award pursuant to N.J.S.A. 2A:24-8(a), (c) and (d). We disagree.

We review issues of statutory interpretation de novo. MasTec Renewables Constr. Co. v. Sunlight Gen. Mercer Solar, LLC, 462 N.J. Super. 297, 318 (App. Div. 2020) (citing Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 294 (2017)). "The objective of all statutory interpretation is to discern and effectuate the intent of the [l]egislature[,]" Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012), and "the best indicator of that intent is the statutory language[,]" which should be given its "ordinary meaning and significance . . . . " DiProspero v. Penn, 183 N.J. 477, 492 (2005). "We construe the words of a statute 'in context with related provisions so as to give sense to the legislation as a whole.'" Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018) (quoting N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 570 (2017)). If the language is clear, our job is complete. In re Expungement Application of D.J.B., 216 N.J. 433, 440 (2014). However, "when the statutory language is ambiguous and 'leads to more than one plausible interpretation,' [we] may resort to extrinsic sources, like legislative history and committee reports." MasTec Renewables, 462 N.J. Super. at 320 (quoting State v. Twiggs, 233 N.J. 513, 533 (2018)).

We disagree with the statutory argument advanced by plaintiff. In determining whether to allow the Board to produce its witnesses and discovery, the arbitrator focused on the express language of N.J.S.A. 18A:6-17.1(b)(3),

namely that "[u]pon referral of the case for arbitration, the . . . board . . . shall provide all evidence including, but not limited to, documents, . . . statements of witnesses, and a list of witnesses with a complete summary of their testimony, to the employee or the employee's representative." In applying the plain language of that provision, the arbitrator determined that the Board provided the discovery required by the statute. The arbitrator adjourned the hearing to give plaintiff additional time to conduct her own discovery and prepare for arbitration.

We find the arbitrator's decision to allow both parties a full and fair opportunity to prepare for the arbitration gave the pertinent language of N.J.S.A. 18A:6-17.1(b)(3) its "ordinary meaning and significance." DiProspero, 183 N.J. at 492. In his comprehensive review of the arbitration record, the judge correctly concluded that

> the statutory use of the phrase 'upon referral' [does not require] that evidence be provided at the same time of the referral. [Plaintiff's] statutory construction is mechanistic and absolute and does not legitimately promote the [l]egislative policy of 'student achievement.' In addition, that interpretation does not benefit the teacher who ultimately wants their matter heard.

To support his reasoning, the judge found the phrase "upon referral" to be ambiguous and, thus, extrinsic evidence was needed to discern legislative intent.

A-3995-19

In his cogent opinion, the judge found that "one of the various definitions of the word 'upon' includes 'on the occasion of, at the time of, or immediately after.'"[4] He added that the legislature will use terms such as "simultaneously with" to indicate that documents need to be provided at the same time of the referral. See N.J.S.A. 2A:18-61.6; N.J.S.A. 2A:44A:21; N.J.S.A. 19:60-1; N.J.S.A. 40A:11-16; N.J.S.A. 48:3-60.

The arbitrator's award was consistent with the plain language of N.J.S.A. 18A:6-17.1(b)(3). The arbitrator articulated a basis to support his decision and explained that plaintiff, not the Board, sought additional discovery when the hearing was adjourned. We conclude the arbitrator did not exceed his powers by denying plaintiff's motion, and we agree with the motion judge's construction of the statute.

Plaintiff also contends there was no credible evidence presented at the hearing that could support count eight of the tenure charge and, therefore, the arbitrator erred in sustaining her termination. She also argues that the arbitrator deliberately ignored facts that disproved the allegations against her. Having

---

[4] See Upon, Merriam-Webster, https://www.merriam-webster.com/dictionary/upon (last visited January 24, 2022).

considered the record, the parties' arguments, and applicable law, we disagree with plaintiff's assertion.

Count eight of the tenure charge states:

> S.A. jeopardized the safety of student S.B. by way of releasing his name to another student with the intent to have him harassed, intimidated, bullied, or worse, as retaliation for her suspension.

Plaintiff's blatant disregard of Dr. West's instruction and the consequences of her actions were all substantiated through credible testimony and documentary evidence at the hearing. It is undisputed that students approached S.B. after his name was released on social media and that S.B. subsequently transferred to a different school. We defer to the arbitrator's credibility findings. Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988) ("As a general rule, the reviewing court should give due regard to the opportunity of the one who heard the witnesses to judge of their credibility . . . .") (internal quotation marks omitted).

Plaintiff next contends that, given her positive annual performance evaluations, her termination violated the doctrines of progressive discipline and mitigation of penalty. On this record, we find no merit to her argument.

Progressive discipline is used "in two ways when determining the appropriate penalty for present misconduct." In re Herrmann, 192 N.J. 19, 30

14

(2007). The first is to "support the imposition of a more severe penalty for a public employee who engages in habitual misconduct." Ibid. The second "is to mitigate the penalty for a current offense." Id. at 32.

However, progressive discipline is not a "fixed and immutable rule to be followed without question." In re Carter, 191 N.J. 474, 484 (2007). Rather, "some disciplinary infractions are so serious that removal is appropriate notwithstanding a largely unblemished prior record." Ibid. The New Jersey Supreme Court has held:

> Although progressive discipline is a recognized and accepted principle . . . that is not to say that incremental discipline is a principle that must be applied in every disciplinary setting. To the contrary, judicial decisions have recognized that progressive discipline is not a necessary consideration when reviewing an agency head's choice of penalty when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest.
>
> [Herrmann, 192 N.J. at 33.]

"[P]rogressive discipline has been bypassed when an employee engages in severe misconduct, especially when the employee's position involves public safety and the misconduct causes risk of harm to persons . . . ." Ibid. Moreover, we have found "notions of progressive discipline inapplicable when disciplinary

15

charges against a public employee have demonstrated lack of competence or unfitness for a position." Id. at 35.

The record shows that the Board used progressive discipline to address plaintiff's inappropriate conduct throughout her tenure. For example, plaintiff was disciplined in 2015, which resulted in the loss of a salary increment and placement on probation. Moreover, as a result of the December 5 incident with S.B., plaintiff was suspended for two weeks. She was ultimately fired when she put S.B.'s safety at risk by disclosing his name on social media.

The record shows that plaintiff demonstrated conduct which would permit a factfinder to conclude that she was unfit to perform the duties of a schoolteacher. The record also shows that her inability to follow school policies posed a risk of harm and endangered the safety of both students and staff. We find this record does not support use of the doctrines of progressive discipline and mitigating of penalty. See Herrmann, 192 N.J. at 33.

Plaintiff next argues the arbitrator's decision is based on a finding that she "intended to put undue pressure on S.B.," which plaintiff alleges was not in the tenure charge and did not afford her proper notice. She contends that "by deciding issues not placed before [the arbitrator] by the allegations in the tenure

charge, the arbitrator exceeded his authority within the meaning of N.J.S.A. 2A:24-8(d), warranting vacation of the award." We disagree.

"Plain notice" is the standard to be applied when considering the adequacy of disciplinary charges filed against public employees. Pepe v. Twp. of Springfield, 337 N.J. Super. 94, 97 (App. Div. 2001). "It is elementary that an employee cannot legally be tried or found guilty on charges of which he has not been given plain notice by the appointing authority." Town of W. New York v. Bock, 38 N.J. 500, 522 (1962). See also Borough of Ho-ho-kus v. Menduno, 91 N.J. Super. 482, 485 (App. Div. 1966) (noting that a public employer can only find an employee guilty of offenses specifically mentioned in the charges). These principles emanate from the concept of affording due process and fairness in proceedings which impact an employee so significantly. See, e.g., Hammond v. Monmouth Cnty. Sheriff's Dep't, 317 N.J. Super. 199, 206 (App. Div. 1999); In re Caldwell v. N.J. Dep't of Corrs., 250 N.J. Super. 592, 615-17 (App. Div. 1991).

Plaintiff knew the December 5 incident was the genesis of the discipline against her. Moreover, she was intimately familiar with the facts the Board used to meet its burden on the charge that she "inten[ded] to have [S.B.] harassed, intimidated, bullied, or worse, as retaliation for her suspension." We note that

17

while the arbitrator wrote, "[plaintiff] intended to put undue pressure on SB," he also referenced count eight of the tenure charge. Plaintiff had a full and fair tenure hearing on charges for which she received sufficient notice. We find the award of termination to be consistent with the charges, and discern no error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3995-19